Coös,
Dec., 1899.

THOMPSON & *a. v.* CURRIER & *a.*

An execution sale of real estate is invalidated by an erroneous statement of the incumbrances thereon, the effect of which is to prevent competition.

One claiming title to real estate will not be estopped by a plea of disclaimer as to the same premises in a former action, unless judgment was rendered therein.

An estoppel *in pais* cannot be founded upon a representation of fact which was neither acted upon nor believed.

In a proceeding to set aside a conveyance executed as part of a compromise which was entered into by mutual mistake, the plaintiff is entitled to relief upon restoring the defendants to the position occupied by them when the agreement for settlement was made.

BILL IN EQUITY. Facts found by a referee. August 1, 1893, the defendant Currier, having recovered a judgment against Samuel W. Thompson, caused the execution to be levied upon Thompson's equity of redemption in Pinkham's Grant, which the sheriff sold to Currier and Pease. December 1, 1893, Currier and Pease filed a bill in equity against Thompson and his wife Eliza, and others, for an injunction to restrain them from cutting timber on the land and for other relief. In their answer, filed March 27, 1894, Thompson and his wife set up a title in the wife. Thompson died April 14, 1894. In September, 1895, the bill was dismissed by agreement as to all the defendants except the heirs of Joseph M. Thompson; Currier released Samuel's estate from all demands and paid Eliza $500, and she and the present plaintiffs (heirs of Samuel) quitclaimed their interests in the grant to Currier and Pease. The value of the grant was then $15,000,

and has since increased. At that time the present plaintiffs and Eliza supposed that the sheriff's sale of 1893 transferred Samuel's interest to Currier and Pease, and that they had no defence against that title; and this understanding led them to assent to the compromise.

In 1891, executions against Samuel were levied upon his equity in Pinkham's Grant; but the levies were defective and passed no title. Prior to the sale of 1893, Currier had purchased the judgments on which the executions levied in 1891 were issued. At that sale he included these judgments with the amount of the execution on which the sale was about to be made, and stated that the incumbrances existing on the property amounted to nearly $9,000. This error was due to mistake. The representation prevented competition. Currier was the only bidder. The referee found that the present plaintiffs were not guilty of laches in not knowing these facts at the time of the compromise; and that, so far as it is a question of fact, the settlement ought to be set aside, and the plaintiffs allowed to redeem, unless they are estopped from so doing.

There were two titles to the grant, known as the Bellows title and the Wentworth title. In the former suit, Currier and Pease attacked the Wentworth title, and insisted upon the validity of the sheriff's sale. Eliza set up the Wentworth title. After the compromise, the case proceeded against the heirs of Joseph M. Thompson, who claimed 1,200 acres under the Wentworth title. At the trial of this branch of the case, Currier did not treat the answer of Samuel and Eliza as a disclaimer of title, other than under Wentworth, but attempted to show that Samuel's possession was under the Bellows title. If, as matter of law, the allegations in the former suit amount to an admission that Samuel and Eliza had no title under the Bellows deed, the referee found that the plaintiffs were estopped. He further found that if the sheriff's sale was voidable by Samuel, on account of Currier's representations, the plaintiffs are entitled to such relief as will restore them to the position they occupied immediately preceding the settlement.

Prior to the compromise, Currier's judgments were presented to the commissioner appointed to allow claims against Samuel's estate, but the commissioner made no mention of them in his report. The report has been accepted, and the time for taking an appeal from the acceptance has expired. The plaintiffs agree that the claims may now be considered as they would have been then. Samuel's interest in the grant is more than sufficient to pay all such claims.

At the time of the compromise, the defendants held certain notes of Thompson & Ricker, upon some of which suits were then

pending. These notes grew out of transactions in relation to this land, and the claim was made that they were a charge upon it. William F. Thompson, one of the makers, is a son and heir of Samuel, and has conveyed a part of his interest in the grant since the settlement of 1895. As a part of that settlement, these suits were abandoned, and the notes were surrendered as paid.

*Albert S. Twitchell, Crawford D. Hening*, and *Chamberlin & Rich*, for the plaintiffs.

*Henry Heywood, Worcester, Gafney & Snow*, and *Ladd & Fletcher*, for the defendants. The general theory upon which equity exercises jurisdiction in case of mistake is stated by a very accurate writer as follows: " Relief for mistake, either in equity or by equitable plea at law, is based on mistake in regard to matter of the agreement, as distinguished from mistake in respect of the inducements thereto, or in respect to some condition precedent to the same; something touching the proposed contract must be asserted on the one side and denied on the other to have been agreed. In a word, relief proceeds upon the ground of want of agreement,— the minds of the parties have not met. The courts, therefore, will not interfere for mere mistake, however serious, in regard to an external matter not a subject of the agreement or a condition precedent to the existence of the same. In case of misapprehension or ignorance of such a matter, interference may be expected only where there has been fraud, or at least misrepresentation in regard to it by the other side." Melville M. Bigelow in 1 L. Q. Rev. 298. See, also: *Whittemore* v. *Farrington*, 76 N. Y. 452, 458; *Deare* v. *Carr*, 3 N. J. Eq. 513; *Nicholson* v. *Janeway*, 16 N. J. Eq. 285; *Williams* v. *Hamilton*, 104 Ia. 423, — 65 Am. St. Rep. 475, and note, 482; Harriman Con. 238; 2 Pom. Eq. Jur., s. 856.

There is an obvious and very broad distinction between the present case and such cases as *Cooper* v. *Phibbs*, L. R. 2 H. L. 149, *Bingham* v. *Bingham*, 1 Ves. Sr. 126, and *Rheel* v. *Hicks*, 25 N. Y. 289; for here the plaintiffs knew that they were conveying away their title,— a title which might be good, and which in certain contingencies, whether present or not to their minds at the time, might be bad. They got for this title just what they bargained for, namely, $500 and the releases. There can be no pretence that they gave something and received nothing in return. There was a certain speculative element in the contract. They knew that, if their title was bad, they were getting $500 and other valuable considerations for something which was in reality worthless. On the other hand, if the title was a valid one, Currier and Pease were

giving that sum of money and those other valuable considerations for something which was in reality of considerably greater value. Both parties to the agreement were aware of its speculative character. Each one knowingly and intentionally took risks. Each one knew precisely what he was giving and what he was getting, although he did not know the value of it. Each received and each gave in turn just what each respectively intended, although it subsequently became apparent to the plaintiffs that their title, which they gave up in exchange for $500 and the releases, was a better and more valuable title than they had supposed at the time of the agreement.

This agreement has a special character of its own which entitles it to the peculiar favor of a court of equity. It was a compromise of a lawsuit pending and actually on trial at the time it was made. In that suit the plaintiffs, in their bill, pray that the defendants therein be perpetually enjoined from setting up any right or title in the premises as against them. Had the compromise not been made, and had the trial proceeded and the suit gone along to its natural termination, the plaintiffs, if successful, would have obtained a decree perpetually enjoining the defendants, according to the prayer of their bill, and that would have been the end of the controversy. The plaintiffs' title to the premises would have thus been conclusively established. From the defendants' point of view, it was to avoid the risk of this result that the compromise was entered into. The object of the compromise, then, was to settle this controversy ; not to settle this or that part of it, but to settle the whole of it and to have done with the dispute ; not to settle the controversy for the time being merely, but once and for all. Every reason for denying relief to the defendants from the consequences of this agreement, considered merely as such, applies with greatly augmented force when the agreement takes on the character of a compromise, and especially of a settlement of an existing litigation. "When a conveyance is made to compromise claims which the parties deem doubtful, and especially if the controversy has for its object the settlement of family controversies, courts will support it if possible, although founded in ignorance or mistake of facts, as well as of law, provided no fraud has been used to mislead and deceive the party executing the conveyance." 1 Per. Tr., *s.* 185. See, also : *Allis* v. *Billings,* 2 Cush. 19 ; *Hoge* v. *Hoge,* 1 Watts 163 ; *Adams* v. *Lage,* 28 N. Y. 103 ; *Holcomb* v. *Stimpson,* 8 Vt. 141 ; *Steele* v. *White,* 2 Paige 478 ; *Boman* v. *Boman,* 8 Conn. 409 ; *March* v. *Piggott,* 5 Burr. 2802 ; *Flannagan* v. *Kilcome,* 58 N. H. 443 ; *Mills Heirs* v. *Lee,* 6 T. B. Mon. 91 ; *Fisher* ⸱v. *May,* 2 Bibb 448.

The foregoing authorities, and many others that might be cited, while perhaps they do not lay down any hard and fast rule on the subject, such as would preclude the exercise of a measure of discretion by a court of equity, yet illustrate the unquestioned general policy of the law in the direction of upholding compromises not induced by fraud. In this particular case, moreover, the fact should not be lost sight of that the compromise agreement in question has been executed in all its details by the parties, which in itself is a strong reason why the court should hesitate to disturb the arrangements thus made, except upon the most urgent considerations. An executed agreement will often be enforced where the same agreement, while executory, would not be binding upon the parties. *Woodward* v. *Miles*, 24 N. H. 289.

The representations made jointly by Samuel W. and Eliza Thompson in their answer were that John Bellows only acquired a title to the north end of Pinkham's Grant, stated to be 1,000 acres; that Currier had released his interest to that part of the grant by his deed to Samuel W. Thompson, dated February 10, 1885; that the title of the 2,000 acres of the grant, commencing at the Jackson line and extending north on the Pinkham road, was, at the date of the levy of the Currier execution, in Eliza Thompson, and was not subject to be levied upon as the property of Samuel W. Thompson. These allegations constitute a complete answer to the bill of Currier against Thompson, which was then pending. They were statements of the facts relating to the title, and not mere statements of a present intention or purpose, as the statement of a person's intention to change his residence. *Langdon* v. *Doud*, 10 Allen 433. "They were statements of a fact or state of things actually existing, or past and executed, on which a party might reasonably rely as fixed and certain, and by which he might properly be guided in his conduct." It is true that a pleading in a cause is subject to amendment by leave of court, but that right of amendment does not exist after the pleadings have become the basis of the action of the parties to the suit, as when the pleadings have become the foundation of a judgment in the suit, or of a settlement of the suit. Samuel W. Thompson had in his answer alleged that the title to 2,000 acres of the grant was in his wife Eliza under the Wentworth deed of 1844; and he could not after such settlement retract the allegations made in the answer as to the title, and set up the Bellows title as the legal one for the purpose of avoiding the settlement. W. F. Thompson, administrator of Samuel W., having entered in the cause after his father's death in 1894, with the pleadings standing unchanged, made, together with his mother Eliza and the other heirs of the estate, the settlement of Septem-

ber 11, 1895. These heirs stand in the same position as to rescinding that settlement in which their father and mother would have stood if the settlement had been made while they were alive and they were asking to have it set aside. Herm. Est., s. 970, citing *Tilton* v. *Nelson*, 27 Barb. 593.

That a person's representation as to his title to real estate is a representation of a fact or existing state of things, by which he will be estopped where another has acted upon such representation, is fully settled in this state. *Thompson* v. *Sanborn*, 11 N. H. 201. See, also: *Buswell* v. *Davis*, 10 N. H. 413; *Wells* v. *Pierce*, 27 N. H. 503; *Corbett* v. *Norcross*, 35 N. H. 99; *Simons* v. *Steele*, 36 N. H. 73; *Davis* v. *Handy*, 37 N. H. 65; *Richardson* v. *Chickering*, 41 N. H. 380; *Drew* v. *Kimball*, 43 N. H. 282. The plaintiffs cite *Wells* v. *Iron Co.*, 50 N. H. 85, to the position that a plea in a pending suit does not constitute an estoppel until there is a judgment rendered in the suit. We do not controvert the position that a plea is not an estoppel until there has been a judgment in the case, or the pleadings have been made the basis of a settlement of the case. Where a party actively induces another to alter his position, he is estopped to deny that he was mistaken as to his title. It would be his own fault that he did not know what his interests were. *Wells* v. *Pierce*, 27 N. H. 503, 511; Herm. Est., s. 978. It is one of the effects of an estoppel founded upon active inducements or actual representations upon which another has acted, that the person who has held out the inducements or made the representations cannot set up a mistake in a material matter as to his title to avoid the estoppel.

The case of *Wells* v. *Pierce*, 27 N. H. 503, clearly states the distinction between an estoppel founded upon the fact that a person knowingly stands by, though he does it passively, and suffers another to purchase property to which he has a known claim, in which case he is called upon to assert his claim then or never, and the estoppel which arises where a person actively persuades or encourages another person to purchase property to which he has the title of which the purchaser is ignorant, in which case the person thus holding out the persuasion or encouragement cannot afterward claim the property against the party making the purchase, though he was not aware of his title. See, also: *Runlet* v. *Otis*, 2 N. H. 167; *Davis* v. *Handy*, 37 N. H. 65; *Libbey* v. *Pierce*, 47 N. H. 309, 314; *Horn* v. *Cole*, 51 N. H. 287, 299; *Gilbert* v. *Manchester*, 55 N. H. 298; *Hardy* v. *Keene*, 67 N. H. 166; *Hicks* v. *Cram*, 17 Vt. 449; *Davis* v. *Bradley*, 24 Vt. 55; *Spiller* v. *Scribner*, 36 Vt. 245; *Bank* v. *Scofield*, 39 Vt. 390; *Halloran* v. *Whitcomb*, 43 Vt. 306; *Soper* v. *Frank*, 47 Vt. 368, 374; *Holman* v. *Boyce*, 65 Vt. 318.

The plaintiffs put much stress upon the fact that the report does not find that the settlement was effected on account of the representations of the answer. The argument of the plaintiffs on this point does not, however, comprehend the whole of our position in relation to the estoppel. Our position is that the bill and answer constituted the issue that was presented for trial before the referee, and that the respective parties to the litigation were making their claims in accordance with the pleadings when the settlement of the controversy was made. That settlement having been made upon the claims as to the title contained in the pleadings, and set up by the respective parties on the hearing before the referee, the plaintiffs cannot now change their claims as to the title for the purpose of getting the settlement set aside.

PEASLEE, J. The sheriff's sale of 1893 was voidable because of the erroneous statement of the incumbrances upon the property sold. *Pearson* v. *Gooch*, 69 N. H. 208; *Bickford* v. *Poor*, 68 N. H. 443. Supposing that it was a valid sale, and not being in fault for so understanding, the plaintiffs made the settlement of 1895, whereby, for a small sum, they unintentionally parted with what proves to be a valuable interest. They did not intend to sell, nor Currier to buy, the interest conveyed, for all supposed it was already owned by Currier. Upon the discovery of the facts they brought this bill, asking to be restored to the rights which they assigned because of the mutual mistake of all parties concerned. The settlement, having been made upon an honest mistake of material facts, should be set aside, unless there is an estoppel. *Wiswall* v. *Harriman*, 62 N. H. 671, 672.

The defence is set up that the answer of Samuel W. Thompson to the original bill in equity brought by Currier and Pease, in which Thompson alleged that the title to the property was in his wife under the Wentworth claim, created an estoppel against the setting up by him, or his privies, of title under the Bellows claim. No decree was ever made in that case, the bill having been dismissed by agreement as to all parties interested as plaintiffs in the present proceeding. Conceding that this answer might be treated as a technical disclaimer, it would not estop the party pleading it until final judgment. *Wells* v. *Iron Co.*, 50 N. H. 85.

At the time of the settlement, there were, or had been, two claims of title,— one under the plaintiffs' mother as mortgagee, and the other under their father as the owner of the equity. Currier had attempted to levy upon the latter interest, and both he and the plaintiffs believed that he had done so. All that the plaintiffs then had to rely upon was the mother's mortgage title; and if this failed, they had no claim upon the property. In this state

of the facts, and while the plaintiffs were claiming by their pleadings that the mother's title was valid, the settlement was made. From this it is argued that the plaintiffs are estopped to deny the truth of their allegation, because the defendants acted upon it and bought the claim. It is a familiar rule of law that one who has induced another to act, by means of representations of facts which he knew, or ought to have known, were untrue, cannot deny those facts to the other party's disadvantage. But it is not found that Currier's action in making the settlement was based upon the truth of the representations, nor even that he believed them to be true. A representation of fact not acted upon and not believed is not a foundation for an estoppel *in pais*. *Moore* v. *Bowman*, 47 N. H. 494, 499 ; *Stevens* v. *Dennett*, 51 N. H. 324, 334 ; *Pittsburg* v. *Danforth*, 56 N. H. 272, 278 ; *Howes* v. *Fiske*, 67 N. H. 289. Not only is it not found that Currier believed in Eliza's claim, but the inference is the other way. If that claim was well founded, she had a perfect title to the property, and Currier had no claim enforceable against it, except, perhaps, some mortgages. All his claims against the estate of Samuel were then worthless ; for that estate consisted almost entirely of Samuel's claim to the grant. Currier's claims against Thompson & Ricker were in about the same situation. The mother was living ; and, unless William inherited something from his father, there was nothing from which to collect the Thompson & Ricker notes. In exchange for Eliza's claim of title, Currier gave $500 in money and these comparatively worthless notes. If that claim was well founded, he bought property worth more than $12,000 for substantially $500. It is manifest that he did not rely upon the truth of the assertion that Eliza's title was valid. On the other hand, when the situation of the parties is considered from the plaintiffs' standpoint, it is clear that, as found by the referee, they relied upon Currier's representations as to his title (*i. e.*, his pleadings), and acted to their injury. While both parties believed that Currier owned Samuel's interest, Currier knew the facts which, as a matter of law, established a lack of ownership. His ignorance was of the law, while theirs was of the facts. Whatever equities there are in the situation seem clearly to be with the plaintiffs.

It is further argued that the plaintiffs are estopped because of the proceedings against the estate of Samuel after the settlement of 1895. To sustain this position, it is shown that executions against him, held by Currier and duly presented to the commissioner appointed by the probate court, were neither allowed nor disallowed, and that the time for appealing from the acceptance of his report has expired. It is not necessary to consider the effect of these procedings, for the plaintiffs agree that these claims may be considered valid.

The report of the referee is that the compromise should be set aside unless the facts reported show an estoppel. As those facts fall short of this, and no error of law appears in the general finding, the plaintiffs are entitled to relief. There has been a common mistake as to an essential fact forming an inducement to a contract. Not only do the circumstances justify the inference that the agreement would not have been made if the truth had been known, but the referee has so found as a fact, and the contract is voidable. *Wiswall* v. *Harriman*, 62 N. H. 671, 672.

The plaintiffs are entitled to have the compromise of 1895 set aside, and the sheriff's sale of 1893 decreed invalid, upon making full restoration to the defendants. They must pay all the claims which the defendants, or either of them, could have established against the estate of Samuel at the date of the settlement, and all such sums as were paid in carrying out the compromise, with interest, and must surrender the releases, etc., received in pursuance of the compromise. They must also pay the Thompson & Ricker notes. At the time of the settlement, suits were pending for the collection of them, and whatever rights Currier or Pease had by attachment or otherwise may have been lost. It appears that such is the fact as to William F. Thompson's interest in the grant. The burden of now attempting to enforce payment of these notes by a levy upon his interest in the property, and an overthrow of his intervening conveyance thereof, ought not to be imposed upon the defendant. "A court of equity is always reluctant to rescind, unless the parties can be put back *in statu quo*. If this cannot be done, it will give such relief only where the clearest and strongest equity imperatively demands it." *Grymes* v. *Sanders*, 93 U. S. 55. It may be that the full payment of these notes will give the defendants more than they could have obtained as the facts were when the settlement was made; but it cannot be said that anything less will be certain to do them full justice. As he who seeks equity must do equity, the plaintiffs must restore the defendants to their former situation before receiving the equitable relief asked for.

Upon a compliance with these conditions, within such reasonable time as the court at the trial term shall order, there will be a decree for the plaintiffs; otherwise the bill will be dismissed.

*Case discharged.*

All concurred.