HOPPIN, GUARDIAN, RESPONDENT, *v.* LONG, APPELLANT.

(No. 5,745.)

(Submitted October 24, 1925. Decided November 21, 1925.)

[241 Pac. 636.]

*Estates of Deceased Persons—Distribution—Executors and Administrators—Nonresident Insane Heir—Notice—Jurisdiction—Equity—Setting Aside Decree for Fraud—Estoppel by Record—Pleadings—Bill of Exception—Preparation and Settlement—Time—Findings—New Trial—Stay of Proceedings—Discretion.*

Estates of Deceased Persons—Final Distribution—Giving of Notice Jurisdictional.
    1. The giving of notice of final distribution of an estate is jurisdictional; hence where a final decree of distribution had been set aside in an equity action for want of notice to one of the interested parties, entry of a corrected decree to conform to that rendered in the suit to set aside without notice was a nullity.

Same—Equity—Court Without Power to Give Directions to Probate Court.
    2. A court of equity in a suit to set aside a decree of distribution on the ground of failure of notice to an interested party has no power to direct the probate court what action to take in the probate proceedings, it not having the power of a reviewing court.

[74 Mont. 558.]

Bills of Exceptions—New Trial—Settlement of Bill—Time.

3. Since the abolishment of an appeal from a new trial order all questions formerly raised on motion for a new trial are reviewable on appeal from the judgment, and the court's ruling on the motion relates back to and becomes a part of the judgment; hence the time within which the bill of exceptions must be prepared and settled begins to run from the date of the decision on the motion and not from the time of filing the notice of appeal.

New Trial—Stay of Proceedings—Discretion.

4. A stay of proceedings pending the disposition of a motion for a new trial rests within the discretion of the trial court.

Estates of Deceased Persons—Distribution—Nonresident—Insane Heir—Notice.

5. Where a petition for distribution of an estate did not mention an insane heir residing without the state and for whom no guardian had been appointed, the decree was voidable as to her, and the fact that the statutory notice had been given her—which was but an idle ceremony in view of her mental condition—did not bar her right to resort to an action in equity to set aside the decree and establish her right in the estate.

Same—Distribution—Want of Jurisdiction—When Court of Equity may Set Decree Aside.

6. Where the time for appeal from a decree of distribution rendered without jurisdiction had expired and an heir seeking to set it aside was not guilty of laches and title to the property remaining in the original distributee, a court of equity may properly grant the relief asked.

Findings—Filing—Time—Statute Directory.

7. The requirement of section 9366, Revised Codes of 1921, that the decision or findings of the trial court must be filed within twenty days after submission of the case is directory only, and failure to make decision within that time does not deprive the court of jurisdiction to decide the case at a later date.

Same—Filing After Expiration of Time—When Proof Against Motion to Strike.

8. Where the trial judge made his findings and conclusions of law within twenty days as required by section 9366, above, and before his term of office expired and directed his stenographer to file them but the latter delayed doing so until expiration of that time, they will not be ordered stricken on that ground.

Equity—Motion of Defendant to Dismiss—Improper Practice.

9. A motion by defendant in an equity case to dismiss the complaint for want of sufficient evidence is in effect a motion for judgment of nonsuit and not proper practice; in such cases all the evidence should be received to enable the supreme court to direct the entry of the proper final judgment.

Estates of Deceased Persons—Distribution—Decree Reviewable as Judgment.

10. A decree of distribution, though not strictly speaking a judgment, is treated and reviewable as such and may be set aside if obtained by fraud.

Equity—Decree—Setting Aside for Fraud—"Extrinsic" and "Intrinsic" Fraud—Definition.

11. While the power of a court of equity to grant relief from a judgment obtained by fraud does not depend upon statute but is

10.  See 16 R. C. L. 729.
11.  See 15 R. C. L. 762.

[74 Mont. 558.]

inherent, the fraud must be extrinsic or collateral to the matter tried, that is, the effect of it must have been to prevent the complaining party from having a trial or from presenting his case fully, and not intrinsic, such as the production of perjured testimony, *etc.*, in which latter case the judgment is valid and a court of equity is without authority to set it aside.

Estates of Deceased Persons—Source of Title of Heirs to Property Distributed.

12. Title of heirs to property of an estate does not originate in the decree of distribution but comes to them from their ancestor, and settlement and final distribution serve only to release the property from the conditions to which, as the estate of a deceased person, it is subject.

Judgments—Void for Want of Jurisdiction—Estoppel not Available.

13. Where plaintiff seeks to have set aside a judgment as void for want of jurisdiction, he may not rely upon it as an estoppel against defendant.

Estoppel by Record—Pleadings Do not Constitute, When.

14. Pleadings do not fall strictly within the scope of estoppel by record, hence recitals in a petition for final distribution of an estate will not work an estoppel unless the pleader's adversary has relied upon and been misled thereby.

Same—Pleadings in Probate Matter Held not to have Estopped Defendant in Equity Action to Set Aside Decree of Distribution.

15. Under the above rule (par. 14) *held*, that where a father, upon the death of his son, had alleged in his petitions for appointment as administrator and for final distribution that the property in question belonged to the deceased, he was not estopped to allege in an action by his former wife from whom he had been divorced for many years, to set aside the decree of distribution to him as sole distributee, that he had furnished the money with which the son had purchased the property and that title thereto was placed in the son's name for convenience only, it appearing that the wife, an insane person, had not taken any action to her prejudice in reliance on such representations.

Appeal and Error, 3 C. J., sec. 1380, p. 1264, n. 1; 4 C. J., sec. 1915, p. 299, n. 71; sec. 2383, p. 575, n. 80; sec. 2558, p. 665, n. 14.

Courts, 15 C. J., sec. 600, p. 1144, n. 57 New.

Descent and Distribution, 18 C. J., sec. 41, p. 829, n. 15.

Estoppel, 21 C. J., sec. 1, p. 1059, n. 1, 2; p. 1060, n. 3; sec. 18, p. 1062, n. 34; sec. 23, p. 1064, n. 57; p. 1065, n. 64; p. 1066, n. 74; sec. 24, p. 1067, n. 85; sec. 136, p. 1135, n. 83; sec. 153, p. 1149, n. 74, 75, 76; p. 1150, n. 78, 79, 80, 81, 82, 83, 84.

Executions, 23 C. J., sec. 397, p. 528, n. 75.

Executors and Administrators, 24 C. J., sec. 1302, p. 527, n. 83 New; sec. 1363, p. 512, n. 13, 16; p. 513, n. 20 New; sec. 1369, p. 516, n. 58 New; sec. 1392, p. 525, n. 76; p. 527, n. 83 New; sec. 1400, p. 529, n. 8; sec. 1404, p. 532, n. 30; sec. 1408, p. 534, n. 52 New.

Insane Persons, 32 C. J., sec. 629, p. 783, n. 3.

Judges, 33 C. J., sec. 87, p. 964, n. 59.

Judgments, 34 C. J., sec. 506, p. 292, n. 67; sec. 738, p. 471, n. 59 New; sec. 739, p. 472, n. 66, 67; sec. 744, p. 475, n. 6; sec. 1161, p. 750, n. 22 New.

New Trial, 29 Cyc., p. 935, n. 20.

Notice, 29 Cyc., p. 1113, n. 2, 5.

Trial, 38 Cyc., p. 1946, n. 48; p. 1951, n. 98; p. 1952, n. 99; p. 1968, n. 97.

*Appeal from District Court, Valley County, in the Seventeenth Judicial District; Frank P. Leiper, Judge of the Seventh District, presiding.*

ACTION by C. E. Hoppin, as guardian of the person and estate of Ernestina Lang, an incompetent person, against A. Lang. Judgment for the plaintiff and defendant appeals. Reversed and remanded, with directions.

*Messrs. Dignan & Shea,* for Appellant, submitted a brief; *Mr. James T. Shea* argued the cause orally.

*Messrs. Hurd, Rhodes & Hallett,* for Respondent, submitted a brief; *Mr. Otis A. Hallett* argued the cause orally.

A court of equity will set aside a decree of distribution obtained by fraud. (*Estate of Hudson,* 63 Cal. 454; *Wheeler* v. *Bolton,* 54 Cal. 302; *Moore* v. *Superior Court,* 86 Cal. 495, 25 Pac. 22; *Estate of Cahalan,* 70 Cal. 604, 12 Pac. 427; *Dean* v. *Superior Court,* 63 Cal. 473; 2 Church on Probate, p. 1374.) And this is the case where the decree is alleged to be a fraud upon the heirs of an estate. (*Sohler* v. *Sohler,* 135 Cal. 323, 87 Am. St. Rep. 98, 67 Pac. 282; *Baker* v. *O'Riordan,* 65 Cal. 368, 4 Pac. 232; *Bacon* v. *Bacon,* 150 Cal. 477, 89 Pac. 317; *In re Seaman's Estate,* 51 Cal. 409, 196 Pac. 928.) The complaint in the case at bar follows the pleadings in the case of *Sohler* v. *Sohler, supra.* (See, also, *Wickersham* v. *Comerford,* 96 Cal. 433, 31 Pac. 358; *Curtis* v. *Schell,* 129 Cal. 208, 79 Am. St. Rep. 107, 61 Pac. 951; *Simonton* v. *Los Angeles T. & S. Bank,* 192 Cal. 651, 221 Pac. 368; *State ex rel. Sparrenberger* v. *District Court,* 66 Mont. 496, 33 A. L. R. 464, 214 Pac. 85.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This is an appeal from a judgment and decree setting aside a decree of distribution in the matter of the estate of Gustav Lang, deceased, reopening the estate matter for further administration, and directing the court in probate, on applica-

tion of plaintiff, to make a new and corrected decree distributing certain real estate to A. Lang and Ernestina Lang, share and share alike. The facts, briefly stated, are as follows:

A. Lang and Ernestina Lang were married in Russia; they had two sons, Rudolph and Gustav. Twenty-six or twenty-seven years prior to the date of trial, the family then being located in North Dakota, Ernestina Lang deserted her family. She told her sons that she would like to go to Milwaukee, but it was not known definitely where she went. Three years later defendant secured a decree of divorce from his wife, and at that time he had no property with the exception of a homestead entry. Lang later acquired property in North Dakota, went to Canada, and there acquired other property. Becoming involved in Canada, he deeded certain property to his creditors and returned to North Dakota. Eight years prior to the time of trial, defendant, with his sons, came to Valley county in this state. All real estate acquired in Montana stood of record in the name of Gustav Lang, who died on May 29, 1920. Thereafter A. Lang, the father, filed the usual petition for letters of administration, in which it was recited that Gustav Lang died intestate in Valley county, leaving an estate therein consisting of real estate, with the description thereof, and that "the next of kin of said deceased, and heir at law" was A. Lang, father. No mention was made of the mother. The estate was fully administered upon, and on December 14, 1920, A. Lang, as administrator, filed his petition for final distribution of the estate to A. Lang as sole heir at law. The decree of distribution was duly made and entered, after the statutory notice given, on December 28, 1920, and the estate matter was then closed.

On May 5, 1922, the probate court for the county of Milwaukee appointed a guardian of the person of Ernestina Lang, "an incompetent person," and on July 20, 1922, plaintiff, C. E. Hoppin, was duly appointed guardian of the person and estate of Ernestina Lang by the district court of Valley county, Montana. On August 15, 1922, Hoppin, guardian, filed complaint herein, alleging that Gustav Lang died leaving surviving

as his only heirs at law, A. Lang, father, and Ernestina Lang, mother, and that at the time of his death, Gustav Lang "was the owner and in possession of" the lands described in the decree of distribution; that in his petition for letters of administration, and again in his petition for distribution, "the said A. Lang, notwithstanding that he well knew of the existence and whereabouts of said Ernestina Lang, and was fully cognizant with her rights in the estate of Gustav Lang, deceased, willfully, wrongfully, fraudulently, and unlawfully represented to the court himself to be the only heir of said Gustav Lang," *etc.;* that said Ernestina Lang had no notice whatever of the proceedings had in the matter of the estate of Gustav Lang, deceased, and "that by reason of the fact that she was at all times herein mentioned insane and incompetent and had no person with the authority to look after her interests, until the appointment of her guardian ⁕ ⁕ ⁕ [in 1922] she could not have protected her said rights if she had had· such notice."

The complaint then alleges that more than one year had elapsed since the entering of the decree, and "plaintiff has no adequate remedy at law or otherwise, save and except by this action." A demurrer to the complaint was interposed and overruled, and thereupon the defendant answered, admitting the allegations that A. Lang and Ernestina Lang were the only heirs at law, and that the property stood of record in the name of Gustav Lang, but alleging affirmatively that the property was purchased by the defendant with his own funds and title placed in the name of Gustav Lang for convenience merely, but that defendant was at all times the owner and in possession thereof, and denied all allegations of knowledge of the existence or whereabouts of Ernestina Lang and of misrepresentation or fraud. By reply the plaintiff denied the affirmative allegations of the answer, alleged that defendant was estopped by his admissions in the probate matter from asserting title, and that, if the lands were purchased by the defendant, such purchase was made with funds belonging to Ernestina Lang, she having loaned "large sums" to A. Lang during their mar-

ried life.  A demurrer was interposed to the reply and over-ruled.

On the trial plaintiff contented himself with the introduction of the deeds to Gustav Lang and the records in the probate proceeding, supplemented by proof that Ernestina Lang had been insane since 1907, at which time she was committed to an asylum in Wisconsin, and of the appointment of her guardian, prior to which appointment she had had no such representative.  The plaintiff further showed, by the superintendent of the asylum, that at one time, eight or ten years prior to the time of trial, Rudolph Lang had visited his mother, and later, perhaps seven or eight years before the trial, Gustav called upon her.  The court denied a motion to strike this testimony, but with the statement that it did not consider the testimony binding upon the defendant.  No attempt was made to show that defendant knew of such visits, nor was any further attempt made to show knowledge of the existence or whereabouts of Ernestina Lang on the part of defendant.

Defendant, on his own behalf, testified that he had never seen nor heard from his wife since she left him; that Gustav Lang was "a very weak boy, lame, deaf, and stammered," and never did any work; never earned nor had any money; that he purchased the property with his own money, and put the title in Gustav's name until he could effect a settlement with his Canadian creditors, but with no intention to defraud his creditors.

The son Rudolph testified that the property was purchased by his father with his (the father's) own funds; that all the money banked in the name of himself and Gustav belonged to the father, and that title was taken in the name of Gustav for the purpose stated by the father under an agreement that Gustave should later transfer to defendant, and that, on several occasions, and especially after the Canadian creditors had received from the property deeded to them more than the full amount of their claims Gustav had asked to have the transfer made, but that it was not done.  Rudolph testified further

that Gustav could do no farm work at any time, and all that he ever did was to help with the housework and cooking.

J. L. Truscott, grantor of a part of the property, testified that he dealt only with A. Lang, and that the deeds were made with Gustav Lang as grantee at the request of A. Lang.

On cross-examination the defendant was asked why he had not told his attorney in the probate proceedings of the mother. His answer was: "I am divorced from my wife so many years, and I thought that is the end of everything; then I come from the old country, Russia, and in Russia a woman had nothing to do with a man's land, and even in Canada a woman had nothing to do with the land, and I thought this is the same law here, and that nobody had nothing, because she don't have one penny with it; I forgot altogether and I am forgetting." Asked concerning Ernestina's property at the time of their marriage, defendant stated that she then had about 600 rubles of the value of forty-eight cents each. He was questioned as to whether he knew where his wife went when she left him, but not as to knowledge of the visits made by the sons.

By way of laying the ground for impeachment, defendant was asked whether, on one occasion, he did not say that "the boys and I have plenty of money; we don't have to work"; if, on the occasion of loaning $2,000 to the Baptist Church, he did not tell one Pease that the money belonged to the boys; if on one occasion he did not tell one Martha Klutzeck, while riding on the front seat of an automobile with her, that the forty-acre tract, pointing it out, was Gustav's place; if, on another occasion, he did not tell one Mrs. Henry Berger that when Gustav died he was worth $40,000; and further that when he married his wife she was the daughter of a Baptist minister and wealthy. Defendant answered each of these questions in the negative. Witnesses called later answered as indicated in the questions.

At the close of the trial on October 24, 1924, plaintiff and defendant submitted proposed findings of fact and conclusions of law, and stipulated that the findings made by the court might be signed anywhere within the state of Montana.

On January 3, 1925, being the last legal day of his term, Judge Comer, then at Plentywood, Sheridan county, adopted the proposed findings of plaintiff and signed them as his own; he then delivered them to his stenographer for delivery by registered mail at Glasgow for filing. The stenographer reached the postoffice after 6 P. M., and the package was held and entered as a registered letter on January 5, 1925, and received and filed at Glasgow on January 6.

Defendant, after due notice, moved the court to strike the findings on the ground that they were filed after Judge Comer ceased to be judge of the district. Judge Borton, being disqualified by reason of his connection with the probate matter, called in Judge Frank P. Leiper, who overruled the motion and entered judgment and decree upon the findings of fact and conclusions of law as made by Judge Comer. The judgment is dated January 27, 1925, and notice of entry was given defendant two days later.

Preliminary to the determination of the questions presented on the appeal, the following motions made by plaintiff in this court must be disposed of:

1. Plaintiff has moved this court to dismiss the appeal upon the ground that, as a corrected decree of distribution has been made in the probate proceeding in conformity with the judgment, the questions presented on the appeal have become moot.

(a) Under sections 10327 and 10330, Revised Codes of 1921, [1] a decree of distribution can only be made after notice duly given as provided therein. (See *In re McFarland's Estate,* 10 Mont. 586, 27 Pac. 389.) The only authority we have found to the contrary is that of *Barrette* v. *Whitney,* 36 Utah, 574, 37 L. R. A. (n. s.) 368, 106 Pac. 522, where it is held that the court, having acquired jurisdiction of the *res,* in such an action *in rem* by the notice of hearing the application for appointment of the administrator, retains jurisdiction, and the omission to give notice of application for distribution is not jurisdictional; but in an elaborate note on the case in 37 L. R. A. (n. s.) 368, it is said that, "although many courts hold" that the proceeding is one *in rem,* "no case other than *Bar-*

[74 Mont. 558.]

*rette* v. *Whitney* has been found which takes the further step of holding that the giving of the prescribed notice of application for an order of distribution is not an essential prerequisite to the exercise of jurisdiction''; and that, aside from the case noted, the courts have uniformly held that the decree, in the absence of notice, is made without jurisdiction, and therefore may be attacked collaterally.

It is asserted by counsel for defendant, and not contradicted by counsel for plaintiff, that notice was not given of the application for the ''corrected'' decree of distribution, and it seems that, on application of plaintiff, the court *pro forma* corrected its decree to conform to the judgment herein. If the judgment herein be valid, it could go no further than to set aside the original decree of distribution, leaving the estate matter as though no decree had ever been applied for or entered but in condition for final distribution and settlement ''upon the application of the    *    *    *    administrator or any heir.'' (Sec. 10327.) But in order to give the court jurisdiction to make and enter a valid decree of distribution, it was necessary, upon the filing of such application, to give the notice required by section 10330. If this was not done the decree entered was a nullity.

(b) Irrespective of the action of the probate court we seriously [2] question the jurisdiction of the trial court, on its findings, to set aside the original decree of distribution or to go further than to declare the defendant an involuntary trustee to the extent of one-half of the property, and to direct a proper conveyance of such interest. Certainly it had not the power of a reviewing court to direct what action should thereafter be taken in the probate proceeding.

The power of a court of equity in such a case as this is treated in Ruling Case Law, as follows: ''Section 179. A court of chancery in granting relief from a judgment at law does not act as a court of errors to examine or reverse the judgment, but it treats all the proceedings at law as valid, and grants relief against the consequence thereof, because the rights acquired thereby cannot be retained in good conscience.

A court of chancery cannot relieve against the law, and does not act on the theory that judgments are wrong, but because of some new matter, on which the court of law did not, or could not, pronounce a judgment, or which for some just cause the party could not bring to the consideration of the court of law. A court of chancery has no power in the strict sense of the term to set aside a judgment at law, and a suit in equity to obtain relief from a judgment in no sense assails the court in which the judgment was rendered. It is strictly a proceeding *in personam,* and the decree adjudges the rights of the parties *inter sese* in relation to that judgment. A court of equity cannot interfere with the records of another court or strike therefrom a judgment entered by such other court. The relief is limited to enjoining parties from proceeding to enforce the judgment. In other words, the mandate of the court of equity does not address itself to the common-law court, but it directs its injunction to the parties, and, if need be, to the executive officers of the law and prohibits those from suing out, and these from executing, any process in pursuance of the judgment in reference to which relief is being granted. In a proper case the equitable relief granted may take the form of a decree declaring the defendant to be a trustee for the plaintiff in regard to the subject matter of the suit. For example, since a court of equity has no jurisdiction to set aside a probate decree, it may compel a defendant, as trustee for the plaintiffs, to make a conveyance to them of the subject matter of the litigation, or if a conveyance cannot be had, to account to them for its value." (15 C. J., sec. 179.)

And in *Sohler* v. *Sohler,* 135 Cal. 323, 87 Am. St. Rep. 98, 67 Pac. 282, the supreme court of California disposed of a judgment similar to that before us as follows: "In this state the jurisdiction to determine heirship, and to distribute the assets of an estate, is vested exclusively in the probate court, under proceedings *in rem,* strictly defined by the statute. It is a matter of gravest doubt, therefore, whether it is within the power of a court of equity in this state to set aside a decree of distribution so given by a court having exclusive jurisdiction

[74 Mont. 558.]

of the matter. But even if the power existed, its exercise, or even the danger of its exercise, would have a most disastrous effect upon land titles. * * * So here we hold that, under our system, the utmost that the court in equity could do, if it finds the facts to be as alleged, would be to decree that the defendant * * * holds title as trustee of the minor plaintiffs, and compel him to make conveyance.''

Except for the action and direction of the trial court, the court sitting in the probate matter was without power or authority to in any manner change or "correct" the original decree of distribution at the time it attempted to do so. (*Merhar* v. *Powers*, 73 Mont. 451, 236 Pac. 1076; *State ex rel. Reid* v. *District Court*, 68 Mont. 309, 218 Pac. 558; *State ex rel. McHatton* v. *District Court*, 55 Mont. 324, 176 Pac. 608; *Finlen* v. *Heinze*, 28 Mont. 548, 73 Pac. 123.)

The new decree of distribution made and entered in the probate proceedings is of no binding force or effect, and the fact that it still stands of record in that court cannot affect, in any manner, the questions before us on appeal. The motion to dismiss must therefore be overruled.

2. Plaintiff has moved this court to strike the bill of exceptions as not settled within time. The proceedings antedating the settlement of the bill are as follows:

On February 7, 1925, and within ten days after the notice of entry of judgment, defendant served and filed his notice of intention to move for a new trial. The matter was set for hearing for February 18. No stay of proceedings was granted pending the disposition of the motion. On February 17, on application of the plaintiff, the court made and entered in the probate proceeding its "corrected" decree of distribution in conformity with the judgment which the defendant was then seeking to have set aside and a new trial granted, and, at the same time, filed therein a petition for partition of the property, under the provisions of section 10334, Revised Codes of 1921, and the court thereupon set the matter for hearing on the twenty-seventh day of February, 1925. No hearing was had

on the motion for a new trial on the day set, to-wit, February 18, 1925. Had no further action been taken by defendant, the court would, on February 27, 1925, have proceeded to a partition of the property, and the only method by which a stay of proceedings could be had was by an appeal from the judgment. On February 24, 1925, defendant perfected an appeal from the judgment.

Thereafter, on May 2, 1925, counsel for plaintiff and defendant filed in the district court a stipulation to the effect that the motion for a new trial should be submitted to Judge Leiper at chambers. This was done, and on May 9 Judge Leiper filed his order overruling the motion for a new trial, and, on May 15, defendant filed with the clerk and served upon plaintiff's counsel his proposed bill of exceptions. There being no judge in the district to settle the bill, defendant applied to this court for the appointment of a referee under the provisions of section 9393, Revised Codes of 1921, and the bill was thereafter duly settled by the referee appointed.

In support of his contention that the bill was not settled within time, plaintiff asserts that the appeal taken before the motion for a new trial was disposed of ousted the court of jurisdiction to hear the motion, and was an abandonment of the motion, and that therefore the time began to run from the time of filing the notice of appeal.

An appeal may be taken from a final judgment within six months after its entry. (Sec. 9732, Rev. Codes 1921.) "Appeals from orders overruling the motion for a new trial are hereby abolished, and all questions heretofore raised on such an appeal may be raised on an appeal from the judgment." (Amendment to sec. 7113, Rev. Codes 1907, by Chap. 225, sec. 12, Laws 1921, now part of sec. 9745, Rev. Codes 1921.)

Where the appeal is from the judgment alone, the bill of exceptions, in the absence of an extension of time, must be filed with the clerk and served upon the adverse party within fifteen days after receiving notice of entry of judgment, but "when-

[74 Mont. 558.]

ever a motion for a new trial is pending, no bill of exceptions need be prepared or settled until the decision of the court upon motion for a new trial has been rendered, but a bill shall be prepared and settled in the same manner and within the same length of time after the decision on the motion for a new trial as is * * * provided for the making and settling of bills of exceptions.'' (Sec. 9390, Rev. Codes 1921.)

Section 9739, in so far as applicable here, provides: ''Whenever an appeal is perfected, as provided in the preceding sections of this Chapter, it stays all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein; * * * but the court below may proceed upon any other matter embraced in the action, and not affected by the order appealed from.''

A stay of proceedings pending the disposition of a motion for a new trial may be granted by the trial court on terms (section 9401), but rests wholly within the discretion of the trial court. (*State ex rel. Robinson* v. *Clements*, 37 Mont. 96, 127 Am. St. Rep. 701, 94 Pac. 837.)

Under our practice there is now no appeal from an order overruling a motion for a new trial; questions theretofore raised thereon are now raised on the appeal from the judgment. The motion for a new trial is made after the judgment and cannot be ''embraced therein''; it is a matter embraced in the action, but not affected by the judgment, and the appeal does not, under the provisions of section 9739, above, stay proceedings in the trial court on the motion, and does not divest the trial court of jurisdiction to hear the motion.

California has a similar statute (Cal. Code Civ. Proc., sec. 946), and, in this connection, it is stated in 2 Cal. Jur., sec. 181, that ''proceedings on a motion for a new trial are not in direct line of the judgment, but are independent and collateral thereto. Therefore, an appeal from a judgment does not divest the trial court of jurisdiction to hear and determine a motion for a new trial''—citing *In re Waters' Estate*, 181 Cal. 584, 185 Pac. 951; *Miller & Lux* v. *Enterprise Canal*

& *Land Co.*, 169 Cal. 415, 147 Pac. 567, *Knowles* v. *Thompson*, 133 Cal. 245, 65 Pac. 468, and other California cases, and *Fuller* v. *United States*, 182 U. S. 562, 45 L. Ed. 1230, 21 Sup. Ct. Rep. 871 [see, also, Rose's U. S. Notes]. "This rule is unchanged by the amendment of 1915 denying appeal from orders on motion for a new trial except in one instance, and authorizing a review of such orders on an appeal from the judgment. To hold that the proceeding on motion for a new trial is independent where an appeal is allowed, and dependent in cases where an appeal is denied and the order reviewable on appeal from the judgment would cause considerable confusion, and it has been held that in all cases the trial court is authorized to entertain a motion for a new trial pending an appeal from the judgment. (*In re Waters' Estate* (on rehearing), 181 Cal. 584, 185 Pac. 951.)"

In the case of *Knowles* v. *Thompson*, above, as here, the notice of appeal was filed after notice of motion for a new trial, and before a decision on the motion. The court held that the appeal had no effect whatever upon the court's jurisdiction to determine the motion, though the appellate court had jurisdiction of the case on appeal.

The questions raised on the motion can now only be reviewed on appeal from the judgment, and it would seem that, under our present procedure as laid down by the legislature, the motion for a new trial, while a matter subsequent in time to the judgment, becomes, when determined, a part of the judgment appealed from, in much the same manner as where a motion is made, after judgment, to tax costs in the action under the provisions of section 9803, Revised Codes of 1921. There the motion is heard after entry of judgment, but, on disposition of the motion, the costs so taxed relate back to, become a part of, and are entered in the original judgment, and the action of the court on the motion is reviewable on appeal from the judgment. So here, if the questions raised and the ruling of the court on the motion, are reviewable on appeal from the judgment, and only on such an appeal, the ruling of the

court and all proceedings on the motion must relate back to and become a part of the judgment.

As the trial court had jurisdiction to determine the motion independent of the appeal from the judgment and did so determine the matter, the time within which the bill of exceptions must be prepared and settled began to run from the date of the decision on the motion (sec. 9390, above), and the bill of exceptions in this case was presented and settled within time.

3. Defendant's first assignment is that the court erred in overruling his demurrer to the complaint. Defendant demurred to the complaint on two grounds: (a) That it does not state facts sufficient to constitute a cause of action; and (b) that the court has no jurisdiction of the subject of the action.

The complaint alleges that Gustav Lang died intestate, leaving surviving him as his only heirs at law, A. Lang, father, and Ernestina Lang, mother, that he was the owner of certain real estate at the time of his death, that the estate was administered upon and finally closed, and that the time for an appeal from the final decree of distribution has elapsed, and plaintiff has no adequate remedy at law or otherwise other than by this action. It is then alleged that Ernestina Lang had no notice whatever of the proceedings in the estate of Gustav Lang, deceased, and was at all times mentioned in the complaint insane and incompetent, and had no person with the authority to represent her rights, and could not have protected her rights had she had notice.

(a) As heretofore stated, notice is essential to give the court [5] jurisdiction, but notice may be either "actual" or "constructive." Actual notice consists in express information of a fact; while constructive notice is that which is imputed by law. (Sec. 8780, Rev. Codes 1921.)

Our statute does not require actual notice of the application for a decree of distribution (sec. 10330, above); such notice means "the formal process, emanating from the source and served in the manner prescribed by the statute." (*Minard*

v. *Douglas County,* 9 Or. 210.) Such a notice is analogous to a "summons" and serves the same function. (*Pacific Coast Ry. Co.* v. *Superior Court,* 79 Cal. 103, 21 Pac. 609.)

Under our statutes, service of summons may also be made either personally (sec. 9110, Rev. Codes 1921), or constructively, under certain circumstances (sec. 9117). But in case of persons residing within the state, who are laboring under the disability of infancy or insanity, a double service is required; *i. e.,* service must be made both upon the person and upon his guardian. (Sec. 9111.) There is, however, no such requirement in connection with service of notice in probate proceedings, where the court is permitted, but not required, to appoint an attorney for minor or absent heirs than those not represented (sec. 10370, Rev. Codes 1921), but an insane person cannot even appear by attorney and press his claims in court.

In *In re Davis' Estate,* 27 Mont. 490, 71 Pac. 757, an insane person appeared by counsel and secured his distributive share of an estate, and this court, speaking through Mr. Chief Justice Brantly, said: "The order, in so far as it directed distribution to him, is erroneous. He should have appeared by guardian. As he did not, there was no competent person asking for a distribution in his behalf."

In *Litchfield's Appeal from Probate,* 28 Conn. 129, 73 Am. Dec. 662, the court said: "In the case before us service of the process was made in fact upon the person of the defendant in the suit, but he was then insane—incapable of transacting ordinary business. * * * He did not appear, no guardian was appointed for him, and no one appeared in his behalf. Of what avail could be the service of legal process upon the person of such an individual? Like service of legal process upon an infant three years old, or upon an idiot *a nativitate,* it was but an idle ceremony, which, as it conveyed to the individual no adequate idea of its import or effect, ought in reason to have imposed upon him no obligation. * * * "

Whether the service of notice in the manner prescribed by the statute is sufficient to warrant the distribution of a dece-

dent's property to all heirs mentioned in the petition for distribution, even though certain thereof may be infants or insane persons for whom no guardian has been appointed, we are not called upon to decide; but where, as in this case, no mention is made in the petition of an heir laboring under such disability and residing without the state, the decree is certainly voidable on behalf of such an heir, and the statutory notice cannot bar her right to appeal to a court of equity for her day in court and the establishment of her rights, if any she has, in and to the property of the decedent, at least where title thereto remains in the original distributee; and in this case we need go no further than this.

(b) Where, as here, it is alleged that the time for appeal [6] from the decree has expired, and the court rendering the decree has lost control over it, and it appears further that the party seeking relief has not been guilty of laches therein, a court with equitable jurisdiction may grant relief from the judgment or decree.

In *State ex rel. Happel* v. *District Court,* 38 Mont. 166, 129 Am. St. Rep. 636, 35 L. R. A. (n. s.) 1098, 99 Pac. 291, it appears that one Toepper was, in 1901, judicially declared insane and committed to the state asylum, and thereafter remained in that institution. In 1907 the wife of Toepper instituted an action for divorce, and, on representing to the court that the defendant was insane, secured the appointment of a guardian *ad litem* in the action; service of summons was made on the guardian alone. The guardian first filed a demurrer, and then permitted default to be taken and the decree entered. A year later a daughter of defendant began an action in equity to have the decree set aside, and petitioned the court for the appointment of a guardian *ad litem,* alleging that the regular guardian of Toepper had refused to act. The trial court refused to make the appointment, whereupon the daughter applied to this court for a writ of mandate to compel the appointment. This court held that there was no sufficient

service, in that the summons had not been served upon Toepper as required by section 6519 of the Revised Codes of 1907 (now sec. 9111, Rev. Codes 1921), and that the trial court did not, therefore, obtain jurisdiction of the defendant; that the decree was valid on its face, as the infirmity in service did not appear therein, and that neither an appeal nor motion to correct the decree would be of any avail, and that, therefore, the action would lie in equity to set aside the decree. Quoting, the court said: " 'Everyone whose rights are to be affected by a judicial proceeding must have his day in court. This is one of the fundamentals of the law, and, when a judgment has been rendered without citation or summons, there must be some remedy afforded the party complaining.' The principle embodied in this statement has been enforced by this court, though in proceedings of a different nature. (*State ex rel. Gemmell* v. *Clancy,* 24 Mont. 359, 61 Pac. 987.) * * * It cannot be doubted that if Henry H. Toepper were *sui juris,* he would have the absolute right to bring his action to have the decree vacated. * * * Can it be said that because he has become a helpless incompetent his rights can be taken away without notice? * * * "

"Coverture, infancy and insanity" have been held sufficient grounds for setting aside judgments improperly rendered. (23 Cyc. 927, and cases cited.)

It is clear, therefore, that, without the allegations of fraud, which will later be considered, the complaint states a cause of action of which a court of equity has jurisdiction.

4. Defendant's next assignment is that the court erred in [7] overruling his motion to strike the findings of fact and conclusions of law from the record upon the ground that the same were filed after Judge Comer's term of office expired.

Section 9366, Revised Codes of 1921, requires that the decision or findings of the court upon a question of fact tried to the court "must be given in writing and filed with the clerk within twenty days after the case is submitted for decision." This section has been held to be directory only, and failure

[74 Mont. 558.]

to *render* the decision within the time limited does not deprive the court of jurisdiction to decide it at a later date (*Toole* v. *Weirick,* 39 Mont. 359, 133 Am. St. Rep. 576, 102 Pac. 590), where the court said: "It is earnestly contended that the equitable counterclaim of defendant Gilchrist should have been dismissed because of the failure of the trial court to observe the provisions of the section quoted above; but this would be a manifest injustice. The litigant is not responsible for the failure of the court to perform its duty."

Here the court did all that the law required as to rendering [8] findings, and immediately, and while its term had not yet expired, put the findings out of its control; all that was left to be done was to file the findings with the clerk, and there was sufficient time for the performance of this duty while Judge Comer was still in office; the failure was due to the dilatory tactics of the stenographer, and not to any act or omission of the court; to say that under these circumstances the findings of fact and conclusions of law should be stricken would be an extremely technical adherence to the form at the expense of substance and "manifest injustice" to litigants.

5. At the close of plaintiff's case in chief, defendant moved the court to dismiss on the ground that the meager evidence adduced failed to prove the material allegations of the complaint. This motion was denied, and on this ruling defendant predicates error.

The motion was, in effect, a motion for judgment of non-[9, 10] suit, and in this connection it must be remembered that this was an action in equity. A motion for nonsuit is not technically proper procedure in an equity case (*Streicher* v. *Murray,* 36 Mont. 45, 92 Pac. 36), and is "a doubtful procedure" (*Kavanaugh* v. *Flavin,* 35 Mont. 133, 88 Pac. 764; *Feeley* v. *Feeley,* 72 Mont. 84, 231 Pac. 908); and in *Stevens* v. *Trafton,* 36 Mont. 520, 93 Pac. 810, it is stated that it is not proper practice to grant a nonsuit in equity cases, and that the entire evidence of the plaintiff and defendant ought

to be received, to the end that, on appeal, the supreme court may direct the entry of a final judgment.

Independent of the rule of practice stated above, this assignment is without merit. Under the admissions of the answer to the effect that Gustav Lang died intestate, leaving surviving him as his sole heirs, A. Lang, his father, and Ernestina Lang, his mother, and that the lands in question stood of record in the name of Gustav Lang, and were, in the probate proceeding, declared to belong to him, the only proof necessary in order for the plaintiff to make out a *prima facie* case was that of the insanity of Ernestina Lang at the time the proceedings in probate were had. This proof the plaintiff furnished.

No error was therefore committed by the trial court, as it pursued the practice approved and laid down by this court. All of the evidence is before us for a final disposition of the whole matter involved, and will be considered in its entirety.

6. Is the judgment sustained by the evidence?

While section 10328, Revised Codes of 1921, declares that a decree of distribution "is conclusive as to the rights of heirs, legatees or devisees, subject only to be reversed, set aside or modified on appeal," the language used is no stronger than that used with reference to judgments in civil actions (sec. 10558, Rev. Codes 1921), and while such a decree is not, strictly speaking, a judgment, it is treated as a judgment and the mode of review applicable to judgments and decrees is by statute made applicable to a decree in probate proceedings (secs. 9729–9731, Rev. Codes 1921; *Ryan* v. *Kinney,* 2 Mont. 454; *State ex rel. McHatton* v. *District Court,* above.

Considered, then, as a judgment, the power of a court of [11]   equity to grant relief from a judgment obtained by fraud is inherent; it does not depend upon statute. (51 R. C. L. 760; *United States* v. *Throckmorton,* 98 U. S. 61, 25 L. Ed. 93 [see, also, Rose's U. S. Notes]; *Pico* v. *Cohn,* 91 Cal. 129, 25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970, 27 Pac. 537; *Donovan* v. *Miller,* 12 Idaho, 600, 10 Ann. Cas. 444, 9 L. R. A. (n. s.) 524, 88 Pac. 82; *Thompson* v. *Thompson,* 129 Ga.

440, 26 L. R. A. (n. s.) 536, 59 S. E. 236; *Clark* v. *Clark,* 64 Mont. 386, 210 Pac. 93.) And this power extends to decrees of distribution in probate proceedings. (*Sohler* v. *Sohler,* 135 Cal. 323, 87 Am. St. Rep. 98, 67 Pac. 282; *McGavin* v. *San Francisco Soc.,* 34 Cal. App. 168, 167 Pac. 182; *In re Ross Estate,* 140 Cal. 282, 73 Pac. 976; *Rice* v. *Braden,* 243 Pa. 141, 89 Atl. 877.) But, as stated by this court in *Clark* v. *Clark,* above: "Not every fraud committed in the course of a judicial determination will furnish ground for such relief. The acts for which a judgment or decree may be set aside or annulled have reference only to fraud which is extrinsic or collateral to the matter tried by the court, and not to fraud in the matter on which the judgment was rendered. * * * What, then, is meant by the expression 'fraud which is extrinsic or collateral to the matter tried by the court?' It is extrinsic or collateral within the meaning of the rule, when the effect of it is to prevent the unsuccessful party from having a trial or from presenting his case fully, as, for instance, keeping him away from court by false promise of compromise, or purposely keeping him in ignorance of the pendency of the action, or where an attorney fraudulently pretends to represent a party and connives at his defeat, or, being regularly employed, sells out his client's interest (15 R. C. L. 763), or where a party residing without the jurisdiction of the court is induced by false pretenses or representations to come within the jurisdiction for the sole purpose of getting personal service of process upon him, or where, through the instrumentality of the successful party, the witnesses of his adversary are forcibly or illegally detained from court or bribed to disobey the subpoena served upon them, or where a judgment is obtained in violation of an agreement between the parties."

Counsel for plaintiff has cited the case of *Sohler* v. *Sohler,* above, as authority for the statement that a court of equity will relieve from a decree of distribution on the ground of fraud in the proof of heirship. We do not so view that authority. The facts alleged in the complaint in the *Sohler Case* are

that the defendant, Lena Sohler, was the administratrix of her husband's estate; that she fraudulently represented to the court that one Paul Reuss was an heir at law of her husband, and connived with Reuss to secure to him a portion of the estate. The court said: "Respondents, against the sufficiency of the complaint, urged by their demurrer that it is the exclusive province of the court in probate to determine heirship and decree distribution; that the complaint goes no further than to charge intrinsic fraud, * * * and perjured evidence, in obtaining a favorable decision upon a matter essential to the proceeding, and one in which the court was bound to exercise its judgment, and notwithstanding that the decision was obtained by such evidence, this fact affords no ground for relief in equity. If this were all the complaint discloses, the respondent's contention would be undoubtedly sound; for it is the general rule that intrinsic fraud, fraud by which a decree or judgment is obtained by false evidence upon issues within the case, is not such fraud as equity will relieve against. * * * But when we come to scan the allegations of this complaint, it will be discovered that there is more alleged than the mere procurement of this decree by false evidence. The executrix of the estate was not alone the trustee of all of the heirs of the estate and of all the parties in interest thereto and thereunder. She was the mother of these minor plaintiffs, had their actual custody and control, and, as their natural guardian, was chargeable with all the high duties pertaining to that relationship. * * * She was under the most solemn obligation to protect the legal rights of her infant and dependent offspring. She was under like obligations to disclose to the court, on their behalf and in their interest, all knowledge which she possessed, and she was under the same obligation to see that their legal claims to the estate were properly presented before the court. * * * Such being her position, it is charged, that in violation of this duty, and of the rights of her minor children, she connived with her adult son—not an heir to the estate of the deceased—to procure for him a

distributive portion of that estate, and that the conspiracy was carried to a successful termination. * * * The moment heirship was set up by the false claimant, Reuss, * * * it became the duty of the guardian of these minor heirs to see that the fullest presentation of their claims was put before the court. * * * '' · (Citing Pomeroy's Equity Jurisprudence, 919.)

It is apparent that the complaint in the *Sohler Case* was held sufficient because of the allegation of fraud in the breach of a plain duty devolving upon the mother, not as administratrix of the estate, but as guardian of her minor children, to disclose facts within her knowledge material to the claims of her wards, and not upon the ground that a fraud was perpetrated upon the court and the minor heirs by the false proof of heirship made. Such fraud is identical with that perpetrated by an attorney who "fraudulently pretends to represent a client and connives at his defeat," given as an example of "extrinsic fraud" in *Clark* v. *Clark,* above, and falls within the first class of fraud by concealment given in Pomeroy on Equity Jurisprudence, section 902.

It will be noted that in reading the cases cited above in support of the doctrine that courts of equity will not relieve from a judgment obtained by intrinsic fraud, there was no disability shown on the part of the person seeking to set aside the judgment and decree at the time of its entry, and therefore in each of those cases, the court had jurisdiction of the person at the time of the entry of the original judgment or decree. Under such circumstances, the obtaining of a judgment or decree by false or perjured testimony, as is the case alleged here, is intrinsic fraud; the judgment or decree is valid, and a court of equity has no authority to set the same aside.

If, then, in this case, the fraud alleged had been fully proved, which is seriously doubted, such proof formed no basis for the judgment entered herein.

7. However, in the case at bar, unlike the cases referred to above, failure of service of notice by reason of the insanity

of Ernestina Lang is alleged in the complaint, and her disability at the time the probate proceedings were had is established beyond controversy. She has, then, not had her day in court to which she is entitled, and it becomes necessary to determine what rights, if any, she had in the estate of her deceased son.

The final distribution of an entire estate is an investiture [12] of the absolute right and title thereto in the distributees (*Estate of Garraud*, 36 Cal. 277), but the title which the heirs acquire in the property does not originate in the decree of distribution; it comes to them from their ancestor and the settlement of the estate in the probate court, and the final distribution only serves to release their property from the conditions to which, as the estate of a deceased person, it is subject. (*Bates* v. *Howard*, 105 Cal. 173, 38 Pac. 718.) That this is true in this state is made plain by statute. "Property is acquired by: 1. Occupancy; 2. Accession; 3. Transfer; 4. Will; or 5. Succession." (Sec. 6816, Rev. Codes 1921.) "Succession is the coming in of another to take the property of one who dies without disposing of it by will." (Sec. 7071.) "The property, both real and personal, of one who dies without disposing of it by will, passes to the heirs of the intestate, subject to the control of the district court, and to the possession of any administrator appointed by that court for the purposes of administration." (Sec. 7072.) And the heirs at law succeed to the intestate's realty immediately on his death. (*In re Williams' Estate*, 55 Mont. 63, 1 A. L. R. 1639, 173 Pac. 790.)

The heirs of one dying without leaving husband or wife or issue are the father and mother, if living, or, if either is dead, the survivor. (Sec. 7073, subd. 2, Rev. Codes 1921.) Consequently, on the death of Gustav Lang, if in fact he was then the owner thereof, title to one-half of the real estate in question passed immediately to Ernestina Lang, as his mother, and, if nothing further appeared in the record for consideration, she was entitled to an appropriate decree vesting that title of record in her.

[74 Mont. 558.]

8. But, by answer, defendant alleged that, while the property stood of record in the name of Gustav Lang, it was purchased by the defendant "with his own funds and the title thereto placed in the name of Gustav Lang merely for convenience, and that the said Gustav Lang was never the actual owner thereof; and that upon the death of said Gustav Lang the said Ernestina Lang acquired no right, title, or interest therein of any kind whatsoever." These allegations were denied by the plaintiff's reply, and, on the trial defendant was permitted to introduce evidence tending to prove these allegations, but in its decision the court made no findings on this phase of the case.

The reason why the court did not make any findings as to the claim of title set up by defendant was that, in his reply, plaintiff pleaded an estoppel against defendant by reason of his statements made in his petition for appointment and in his petition for the decree of distribution, to the effect that the property in question was a part of, or the whole of, the estate of Gustav Lang, deceased, and on this showing the court held that defendant was estopped from asserting title in himself in this action. Defendant assigns error on this finding of the court. The question then is: Does the recitation referred to estop the defendant from asserting title to the property in contradiction of those recitations?

"In the broad sense of the term 'estoppel' is a bar which precludes a person from denying the truth of a fact which has in contemplation of law become settled by the acts and proceedings of judicial or legislative officers, or by the act of the party himself, either by conventional writing or representations, express or implied, *in pais*. To use the quaint language of Lord Coke, it is so called 'because a man's owne act or acceptance stoppeth or closeth up his mouth to allege or plead the truth.' However this statement does not mean that the party is precluded from alleging the truth, as truth, but because what he now assumes to be true is something inconsistent with his former position." (21 C. J. 1059.) Generally speak-

ing, estoppel is by record, by deed, or by an equitable es-
toppel, or *in pais.*

Plaintiff contends that the estoppel here is "by record"—
that is, by the judgment of the probate court in making the
decree of distribution—and, in order to maintain his conten-
tion, treats the decree as a valid and existing judgment of
the court, citing sections 10558 and 10561, Revised Codes of
1921, and *Wetzstein* v. *Boston & Montana etc. Co.*, 26 Mont.
193, 66 Pac. 943, as to the effect of a final judgment in a sub-
sequent action between the same parties and over the same
subject matter.

Our Codes provide, in the nature of an estoppel, what pre-
sumptions are conclusive and therefore cannot be contradicted
on a trial. (Sec. 10605, Rev. Codes 1921.) So far as these
might have any application to the question here presented, they
are: "The truth of the facts recited, from the recital in a writ-
ten instrument"; "the judgment or order of a court, when
declared by this Code to be conclusive"; and "whenever a
party has, by his own declaration, act or omission, intentionally
and deliberately led another to believe a particular thing true,
and to act upon such belief, he cannot, in any litigation aris-
ing out of such declaration, act or omission, be permitted to
falsify it."

Plaintiff's position as to the judgment is untenable; the
[13] judgment which he seeks to present as a valid final ad-
judication of the rights of the parties, for the purpose of the
estoppel, is the very decree which he was seeking in the action
to have set aside as void and of no effect whatsoever. (*Thomp-
son* v. *Currier*, 70 N. H. 259, 47 Atl. 76; *Wells* v. *Jackson*, 50
N. H. 85.)

The petitions are not such written instruments as are referred
[14] to in the section above referred to, but are in the nature
of pleadings in the probate proceeding, and pleadings "do not
fall strictly within the scope of estoppel by record." (21 Cyc.
1064.) And while in certain cases statements in a pleading

may work an estoppel, this is not always so; but in order to have that effect it has been said that the adversary party must have accepted and relied upon the allegations or recitals. (*Reynolds* v. *Adden*, 136 U. S. 348, 34 L. Ed. 360, 10 Sup. Ct. Rep. 843; *Wallace* v. *Matthews*, 39 Ga. 617, 99 Am. Dec. 473; *Lachman* v. *Block*, 47 La. Ann. 505, 28 L. R. A. 255, 17 South. 153; *McClure* v. *Livermore*, 78 Me. 390, 6 Atl. 11.) This rule is analogous to that in equitable estoppel and estoppel *in pais*, that a party who was not misled to his prejudice by anything done by his adversary is not in a position to assert estoppel. (*In re Estate of Nix*, 66 Mont. 559, 213 Pac. 1089; *National Bank of Gallatin Valley* v. *Ingle*, 53 Mont. 414, 164 Pac. 535; *Yellowstone County* v. *First Trust & Sav. Bank*, 46 Mont. 439, 128 Pac. 596; *Fabian* v. *Collins*, 3 Mont. 215.)

Thus it is stated, in 21 Cyc. 1149, that a renunciation, disavowal, or disclaimer of title in "a written instrument other than a specialty, from testimony or deposition, or from allegations in pleadings * * * may work an estoppel; nevertheless in order to create an estoppel by conduct of this character it must appear that when the party against whom the estoppel is claimed made the declarations he was aware of the true state of facts; that the declarations were made with the intent to deceive or with such culpable negligence as to amount to constructive fraud, that the person by whom the estoppel is invoked was not a stranger to the transaction or one whose conduct the declaration was not designed to influence; that he was not only destitute of all knowledge of the true state of facts but also of all convenient or ready means of acquiring such knowledge; that he acted in reliance on the disclaimer and altered his position to his prejudice." (Citing cases.)

When we recall that the record discloses the fact that defendant had divorced Ernestina Lang more than a quarter of a century prior to the proceedings herein, and it was not shown that he had any knowledge either of her existence or where-

abouts, and it further appears that no action was taken by her or on her behalf, to her prejudice, by reason of the representations made, it will be seen that the facts in this case fall far short of what is required to constitute an estoppel by pleadings under the above rule.

It seems that, under the authorities, the rule with respect [15] to representations, made as to title in petitions in probate matters, is less strict than that governing pleadings generally, and that, in such matters, unless another has been misled to his prejudice thereby, the representations made by an administrator in a probate proceeding do not preclude him from thereafter asserting his individual rights to the property (*Anthony* v. *Chapman*, 65 Cal. 73, 2 Pac. 889; *Carter* v. *McManus*, 15 La. Ann. 679; *Werkheiser* v. *Werkheiser*, 3 Rawle (Pa.), 326; *Baker* v. *Brickell*, 87 Cal. 329, 25 Pac. 489); and this rule seems to have been recognized by this court in *Brundy* v. *Canby*, 50 Mont. 454, 148 Pac. 315. The reason for the rule is given in *Carter* v. *McManus*, above, as follows: "Admissions made by an executor or administrator in the course of judicial proceedings, are made for the benefit of the estate represented by him, and do not [therefore] conclude his individual rights by way of estoppel."

In *Carruthers* v. *Whitney*, 56 Wash. 327, 134 Am. St. Rep. 1114, 105 Pac. 831, an administratrix was held to be estopped to claim certain property as her own, but there the administratrix had petitioned the court for an order of sale of the property as that of the estate and had proceeded to sale, and, as administratrix, had executed and delivered her deed to the purchaser, so that, in fact, she was estopped by deed rather than by disclaimer or representations.

Under the circumstances of this case, we are of the opinion that the doctrine of estoppel does not apply, and that therefore the court should have considered the testimony as to the ownership of the property involved and made findings thereon. In order to warrant findings in favor of the defendant on this phase of the case, the evidence should be clear, satisfactory,

and convincing to the court, and on the cold record we will not presume to determine the matter, but leave it to the trial court with its superior advantage in seeing and hearing the witnesses on the stand.

The judgment is reversed and the cause remanded to the district court of Valley county, with direction to grant the defendant a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

Rehearing denied December 12, 1925.