In Re Estate of NIX, Deceased, SOUDER, Appellant,
*v.* KNUDSEN, Respondent.

(No. 5,094.)

(Submitted March 7, 1923.  Decided March 26, 1923.)

[213 Pac. 1089.]

*Executors and Administrators—Appointment Under Power of
Attorney—Waiver of Right to Letters—Residence—Evidence
—Sufficiency—Estoppel.*

Administrators—Residence Within State—Evidence—Sufficiency.
  1. *Held,* that evidence that the nonresident sister of a decedent
  moved to Montana for the purpose of petitioning for letters of ad-
  ministration and with the intention of remaining, was sufficient to
  establish the fact of her residence in the state, in the absence of
  any declarations or actions showing a contrary intent and in view
  of the fact that she had no permanent residence anywhere else, and
  that she therefore was at the time of making petition for letters,
  about a month after her arrival in the state, a *bona fide* resident
  within the meaning of section 10072, Revised Codes of 1921, re-
  quiring an administrator to be a *bona fide* resident of the state.
Power of Attorney—Strict Construction.
  2. A general power of attorney must be strictly construed and the
  authority conferred is not to be extended beyond that which is
  given in express terms or which is necessary and proper to carry

---

  1. Nature of residence contemplated by statute or rule making resi-
dence within state qualification of executor or administrator, see notes in
Ann. Cas. 1915C, 787; 18 A. L. R. 581.

into effect that which is expressly given, and the agent cannot lawfully do any act which is not for the principal's use and benefit.

Same—Waiver of Right to Administration of Estate.

3. *Held,* under rule 2 above, that where a nonresident sister of an intestate decedent had given her resident daughter a power of attorney authorizing her to transact business for "her use and benefit," and the daughter without knowing of her mother's rights in the premises had procured the appointment of an administrator, the latter was in no position to assert on petition of the mother for revocation of his letters and issuance of letters to herself that the daughter under the power of attorney had waived her principal's right to letters or that the mother was estopped by her agent's act, such act not having resulted in any benefit to the principal.

Waiver of Right—Intent to Waive Essential.

4. To constitute a waiver of a right there must have been an intention to waive.

Estoppel—When Defense not Available.

5. The doctrine of estoppel cannot be resorted to unless the party asserting it relied upon and was misled to his prejudice by the act of his opponent.

*Appeal from District Court, Yellowstone County; A. C. Spencer, Judge.*

Petition by Texana Souder praying for the revocation of letters testamentary issued to H. G. Knudsen in the estate of Robert L. Nix, deceased, and issuance of letters to herself. From an order denying the petition petitioner appeals. Reversed and remanded, with directions.

*Messrs. Pierson & Smith* and *Mr. Grover C. Cisel,* for Appellant, submitted a brief; *Mr. George W. Pierson* argued the cause orally.

The power of attorney given Winifred Westfield merely authorizes her to demand, receive and recover property belonging to or due the appellant, including the right to bargain, sell and mortgage. It is entirely silent as to the matter of nomination or petitioning for letters of administration, neither does it authorize the attorney in fact therein named to waive any rights of nomination or waive the right of appellant to petition for letters of administration. This instrument contains the general clause "giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in

and about the premises, as fully to all intents and purposes as I might or could do if personally present.'' This general clause does not enlarge the specific powers enumerated in the instrument. (21 R. C. L. 882; *Billings* v. *Morrow*, 7 Cal. 172–175, 68 Am. Dec. 235.) A power of attorney by a widow to sell her interest in her husband's estate does not confer authority to release dower. (*Welch* v. *McKenzie*, 66 Ark. 251, 50 S. W. 505.) The right to administer upon the estate of a deceased person cannot be delegated. (*Georgetown College* v. *Browne*, 34 Md. 450.)

As the petitioner is a favored person named in the statute, she being competent, the court was without discretion as against the incumbent. (*In re Blackburn's Estate*, 48 Mont. 179, 137 Pac. 381; *In re Daggett's Estate*, 15 Ida. 504, 98 Pac. 849; *In re Aldrich's Estate*, 147 Cal. 343, 81 Pac. 1011; *Li Po Tai's Estate*, 108 Cal. 484, 41 Pac. 486; *In re Watson*, 31 Mont. 438, 78 Pac. 702; *State ex rel. Cotter*, 49 Mont. 146, 140 Pac. 732; *In re Gorden's Estate*, 142 Cal. 125, 75 Pac. 672; *Justice* v. *Watkins*, 251 Ill. 13, 95 N. E. 1025; *Owen's Estate*, 30 Utah, 351, 85 Pac. 277.)

*Messrs. Goddard & Clark* and *Mr. F. L. Tilton*, for Respondent, submitted a brief; *Mr. E. T. Clark* argued the cause orally.

The acts and statements of petitioner herein, through her agent, amounted to an express waiver of her right to name the administrator, but even though such is not the case, we maintain that the acts and statements on the part of petitioner, as testified to by the petitioner and her daughter themselves are sufficient to estop petitioner from now seeking to revoke the appointment of the present administrator. ''One who, by his renunciation or disclaimer of a right or title, has induced another to believe and act thereon, is estopped afterward to assert such right or title.'' (21 C. J. 1148, sec. 153.)

Under either the theory of estoppel or waiver the petitioner has lost her rights. ''Waiver of right to letters of administra-

66 Mont.—36

tion cannot be afterwards withdrawn." (*Estate of Kirtlan,* 16 Cal. 162; *Estate of Moore,* 68 Cal. 281, 9 Pac. 164; *Estate of Hamilton,* 34 Cal. 464; *Estate of Keane,* 56 Cal. 407.) "A nomination may be revoked at any time before it has been acted upon, but after a proceeding has been instituted by the nominee to obtain letters, the nomination cannot be revoked without reason." (23 C. J. 1046, sec. 114.)

MR. COMMISSIONER BENNETT prepared the opinion for the court.

Robert L. Nix died intestate at Billings, Montana, on July 14, 1921, leaving estate in Yellowstone county. On July 19th, Thomas B. Nix, a brother of decedent, filed a petition for letters of administration upon the estate. Before the petition was heard the applicant became indisposed. No action was ever taken on the original petition. On August 20 of the same year, a supplemental petition was filed by Thomas B. Nix, in which he renounced his right to letters and prayed for the appointment of H. G. Knudsen as administrator. Before there was a hearing upon the supplemental petition Thomas B. Nix died. Three days before his death Winifred Westfield, a daughter of Texana Souder, one of the sisters of Robert L. and Thomas B. Nix, arrived at the home of Thomas B. Nix. After her arrival and shortly after the death of Thomas B. Nix on September 1, 1921, the niece received from her mother a power of attorney dated August 30, 1921, empowering her for the "use and benefit" of Texana Souder to transact business. Before the death of Thomas B. Nix he had informed Mrs. Westfield that he had nominated Mr. Knudsen to be the administrator of the estate of Robert L. Nix. Some time later Mrs. Westfield accompanied Mr. Knudsen to Billings from Laurel, and together they went to the office of Knudsen's attorneys. Mr. O. F. Goddard, one of the attorneys, testified: "I told her and I told Mr. Knudsen there at the time that Thomas B. Nix was the only resident of Montana who would have the preference right to be appointed, and that he was

dead, and that the other brothers and sisters would, if they lived in Montana, could be appointed, but none of them lived here, and that Thomas B. Nix had designated Mr. Knudsen in the supplemental petition, and that, if there was no objection to it, he would be appointed. I think I said that the petition was set for hearing on the 10th of September, and told them when they left to come down on the 10th, and they did. Mr. Knudsen and Mrs. Westfield came to my office, and I said, 'We will go over to the courthouse and have Mr. Knudsen appointed.' We came over together, and I secured the files from the clerk's office, and we went into Judge Stong's chambers. I think that this was a case that would be assigned to Judge Spencer, but he was out of town on the supreme court. We went to Judge Stong and exhibited to him—I did—the petition and supplemental petition, and introduced him to Mr. Knudsen and Mrs. Westfield, and I stated to him that Mrs. Westfield was the daughter of one of Bob Nix's sisters, and I presented the order appointing Mr. Knudsen to Judge Stong, and he signed it. We then went down to North's place over here to procure a surety bond in the sum of $20,000, which we did procure, and we came back to the clerk of the court's office and presented the bond, and the clerk administered the oath to Mr. Knudsen, and I made out the letters of administration, and then they were signed by the clerk of the court. Q. Was Mrs. Westfield with you during all of this time? A. She was with us all the time, and I procured one or two copies of the letters of administration. We went over there, over to the bank, American National Bank, and I presented a copy of the letters to Charlie Spear, who was the cashier, I think, at that time, and we went down then to the vault with Mr. Spear, and he took the master key and opened the deposit box and took out the contents and examined it, and we took it away with us, took everything out of the box, except we did not find at that time the diamond ring that was in there, took them up to my office and made a list of the papers, notes, and mortgages and contracts and those things, and Mr. Knudsen and Mrs. West-

field then, as I assumed, went back to the bank; at least the papers were put in the bank because we afterwards took them out. Q. Did Mrs. Westfield at any time raise any question as to who was entitled to the appointment as administrator? A. She did not.''

On October 30, 1921, Texana Souder arrived from California, and on November 26th filed a petition praying for the revocation of the letters issued to Knudsen and for the issuance of letters to herself. This petition was set down for hearing. The hearing was had on January 6, 1922, at which time the testimony was taken. The court thereafter denied the petition and ordered it dismissed. From this order Texana Souder appealed.

There are two questions which we will discuss. They are: [1] (1) Whether or not Texana Souder was at the time of her application a *bona fide* resident of the state of Montana; and (2) whether or not on the facts she was precluded from asserting whatever right she might have had to letters of administration.

1. The first question must be answered in the affirmative. There was some testimony elicited on cross-examination of Mrs. Souder which tended to show that she had not been located in any one place for any considerable period of time prior to her coming to Montana in October, 1921. It is also apparent that she was induced to come to the state by the knowledge she had obtained that she might be appointed administratrix of her brother's estate. The testimony also discloses that her avocation was such that she moved from place to place frequently. The question of what induced her to come to Montana is not material, if in fact she established a residence here. It is true that to establish a residence there must be a union of act and intent. The evidence is conclusive that Mrs. Souder did move to Montana. The only question left open would be the one of her intention in so moving. We think that her statement that she intended to remain in Montana, coupled with the fact that she clearly had no home else-

where, in the absence of any declarations or actions showing a contrary intention, are sufficient to establish the fact of residence. She was therefore, in our opinion, a *"bona fide* resident of the state" within the meaning of section 10072, Revised Codes of 1921.

2. The second question must be answered in the negative. In [2, 3] our opinion Mrs. Souder was not precluded from asserting her rights. It is not claimed that Mrs. Souder herself did anything except to execute a power of attorney to her daughter, which would preclude her from asserting her right to ask for a revocation of the letters and the issuance of letters to herself. The only acts which respondent relies on were those of the attorney in fact, Winifred Westfield. We may therefore look into the question whether, under the power of attorney, Mrs. Westfield could waive her mother's right to letters of administration or estop her mother from asserting such a right. We are of the opinion that no such authority existed.

As is stated in volume 2 of Corpus Juris, at page 556: "In construing powers of attorney the usual rules of construction of written instruments apply, in accordance with which a power of attorney, being a formal instrument, must be strictly construed according to the natural import of its language, and the authority conferred is not to be extended beyond that which is given in express terms, or which is necessary and proper to carry into effect that which is expressly given." And on page 557 the text proceeds: "The instrument must be construed according to the natural import of its terms, and, where the meaning of the terms is obvious, such meaning is not by implication to be enlarged or restrained beyond what is expressed as indicated by the natural and ordinary meaning of the language used." Such rule was recognized by this court in *Muth* v. *Goddard,* 28 Mont. 237, 98 Am. St. Rep. 553, 72 Pac. 621, wherein the court, speaking through our present chief justice, then commissioner, quotes from the case of *Hemstreet* v. *Burdick,* 90 Ill. 444: "But it is said the power must be strictly construed. This may be true, but it does not re-

quire that it shall be so construed as to defeat the intention of the parties. Where the intention fairly appears from the language employed, that intention must control. A strained construction should never be given to defeat that intention, nor to embrace in the power what was not intended by the parties.'' In the same case of *Muth* v. *Goddard* it was said: ''Under a general power of attorney, however, the agent cannot lawfully do any act unless it be for the principal's use and benefit.''

We do not think any benefit could result to Mrs. Souder from the acts of the attorney in fact, even if such acts would have constituted a waiver by Mrs. Westfield of any rights she herself might have had.

We may say that, since it is clear that Mrs. Westfield did not [4] know of her mother's rights at the time she accompanied Mr. Knudsen to Billings and did the things relied on by respondent, there would have been no waiver of such rights, even if she had had the authority to waive for the reason that the intention to waive was absent. (See 27 R. C. L., sec. 5, p. 908.)

Neither can the doctrine of estoppel be resorted to by respondent. [5] One of the essential ingredients of estoppel is absent, namely, ''that plaintiff relied upon and was misled to his prejudice by the act of'' Mrs. Westfield. (See *Wells* v. *Waddell*, 59 Mont. 436, 196 Pac. 1000.)

Returning to the question of the authority under the power of attorney, we can gather nothing from the language used which would lead us to say that it was intended that the attorney in fact had any authority to do other than represent the donor of the power in the usual course of business transactions incident to the taking charge of and handling property and disposing thereof. Whatever transactions were entered into were to be for the ''benefit'' of the principal.

We do not wish to be understood as saying that anything which was done by the agent was without or beyond the power or authority granted by the power of attorney. It is evident that Mrs. Westfield was merely inquiring as to what the estate

[66 Mont. 559.]

consisted of and its value, and endeavoring to obtain such information as would be valuable to her mother.

Some emphasis is placed on the rule that third persons are not bound by secret instructions from principal to agent. That rule is not applicable to the present case. If Mr. Knudsen or his attorneys had asked to see the power of attorney which defined the authority of Mrs. Westfield and which they had been advised was in Mrs. Westfield's possession, they at least should have requested an inspection of it. They would have then been in a position to act intelligently.

On the entire record we are of the opinion that the trial court erred in denying and dismissing the petition. We therefore recommend that the order appealed from be reversed, and the cause remanded to the district court, with directions to make and enter an order in the matter of the estate of Robert L. Nix revoking the letters heretofore issued to H. G. Knudsen and ordering letters to be issued to Texana Souder upon her taking the oath of office and giving bond in an amount to be determined by the district court in conformity with the statutes in such cases.

PER CURIAM: For the reasons given in the foregoing opinion, the order appealed from is reversed, and the cause remanded to the district court, with directions to make and enter an order in the matter of the estate of Robert L. Nix, revoking the letters heretofore issued to H. G. Knudsen and ordering letters to be issued to Texana Souder upon her taking the oath of office and giving bond in an amount to be determined by the district court in conformity with the statutes in such cases.

*Reversed and remanded.*