IN RE McGOVERN'S ESTATE. FLYNN ET AL., APPELLANTS,
v. DOUGHERTY, EXECUTOR, RESPONDENT.

(No. 5,947.)

(Submitted September 21, 1926.  Decided October 16, 1926.)

[250 Pac. 812.]

*Probate Proceedings—Distribution of Real Property to Heirs—
Refusal of Order—Appeal—Undertaking—Sufficiency—Non-
appearing Devisees—Notice of Appeal—Power of Executor
to Sell Real Property—Estoppel—Wills—Jurisdiction.*

Probate Proceedings—Appeal—When One Undertaking Sufficient.
   1.  Where the purpose of a petition in an estate matter was to
have the executor render a final account, settle the estate
and deliver possession of the real estate to the devisees, on
appeal from the order denying the petition and dismissing the
proceeding the appellants were required to furnish but one joint
appeal bond in the sum of $300.
Same—Appeal—Deposit of Money in Lieu of Undertaking—No Writ-
ing Required.
   2.  While a written undertaking on appeal must specify the
purpose for which it is given, where money is deposited in lieu of
such undertaking no writing is required, the statute (sec. 9734,
Rev. Codes 1921) declaring the purpose for which it is deposited.
Same—Petition to Compel Executor's Final Account—Nonappearing
Devisees—Notice of Appeal—"Adverse Parties."
   3.  Where nonappearing devisees whose interests rather than
being injuriously affected by the reversal of an order denying
the petition of others to require the executor to make final
account and turn over the real property of the estate to the devi-
sees could only be benefited thereby, they were not "adverse"
parties within the meaning of section 9733 of the Revised Codes,
providing that notice of appeal must be served upon "the adverse
party or his attorney."
Same—Executors and Administrators—Speedy Administration of Estate
Required.
   4.  Estates of deceased persons should be administered with dis-
patch to the end that they shall not be wasted by needless ex-
penses incident to delay and continued allowances; hence where
there was an inconsiderable indebtedness, with no harassing
litigation, and a large amount of cash on hand at the time of
testator's death, the estate should have been distributed at the
expiration of one year, instead of permitting it to remain in
the hands of the executor for five years.
Same—Title to Property of Estate Vests in Heirs upon Death of
Testator.
   5.  Title to property left by a decedent does not depend upon
the action of the court in charge of it, but vests in the devi-

2.  See 2 R. C. L. 110.

sees immediately upon the death of the testator, subject only to the liens of creditors and possession in the executor for the purposes of administration, and the decree of distribution merely releases the property from these conditions.

Same—When Court must Order Delivery of Real Property to Heirs—Discretion.

6. Under section 10139 of the Revised Codes of 1921, when the time for the presentation of claims against an estate has expired and all the debts of the decedent have been paid, the court is without discretion in the premises but must deliver the real property to the heirs or devisees.

Same—Wills—"Estate"—Definition.

7. Under the rule that the words used in a will must be given their ordinary, and not technical meaning, *held* that the word "estate" in popular parlance is not more comprehensive in meaning than the term "property," unless restricted by words expressing a different intention.

Same—"Devise"—"Bequest"—Definition.

8. A "devise" is a gift of real property, and a "bequest" a gift of personal property, although they are often used synonymously, the intention of the testator to be drawn from the words of the will, taking into view the circumstances under which it was made.

Same—Wills—Executors—Power to Sell Real Property not Expressly Given—When Implied.

9. Where a will does not in express terms grant the executor the power of sale of the real property of the estate, such power can only be implied when it is clear from the entire will that the testator intended to grant it, *i. e.*, some duty must have been imposed upon the executor by the testator which necessarily carries with it the sale thereof to enable him to perform that duty.

Same—Will Held not to Grant Executor Power to Sell Real Property of Estate.

10. Under the above rules, *held* that a will showing a clear intention of the testator to devise and bequeath his entire estate to the devisees in equal undivided shares, was not subject to the construction that by using the words "estate," "undivided interests" "bequest" etc., he intended to grant the executor the power of sale over the real property and to direct the conversion of his entire estate into cash for distribution to the devisees.

Estoppel—When Doctrine not Available.

11. The doctrine of estoppel cannot be resorted to unless the party asserting it relied upon and was misled to his prejudice by the acts of his opponent.

Probate Proceedings—Executor—Power to Sell Real Property—Estoppel of Heirs to Question Right.

12. An executor, not being interested in the estate in his hands, could not have been prejudiced by the alleged acquiescence by the devisees in conducting the affairs of the estate for five years on the theory that under the will he had the power to sell

5. Right of heir in property of decedent, see notes in 44 Am. Dec. 338; 12 Am. St. Rep. 93; 112 Am. St. Rep. 1021. See, also, 9 R. C. L. 74.

7. Meaning of word "estate" as used in a will, see note in 14 Am. Dec. 576. See, also, 28 R. C. L. 236.

the **real** property belonging to it, and therefore was in no position to assert that they were estopped to question the continuation of such conduct.

Same—Order of Sale of Real Property—When Void—Failure to Appeal—Effect.

13. Where, long after real property belonging to an estate should have been turned over to the heirs, the court made an order directing the executor to sell it, the order was void from its inception, and therefore failure of the devisees to appeal therefrom did not deprive them of the right thereafter to petition for an order to the executor to make final settlement and deliver possession to them.

Same—Court has Power to Rescind Order of Sale of Real Property.

14. The district court sitting in probate has power to control an order of sale of real property of an estate, and may, circumstances warranting it, thereafter grant a petition of the devisees for an order directing the executor to deliver possession of the property to them.

Same—Wills—Provision Against Contest by Heir—What not a Violation of Provision.

15. A clause in a will that if any beneficiary thereunder should, directly or indirectly, contest or aid in contesting it or the distribution of the estate under it, he should be barred from sharing in the estate, *held* not violated by the devisees in their endeavors to compel the executor to make final settlement and turn over the real property to them, contrary to his construction of the will.

Same—Distribution of Real Property—Executor not Interested Party—What Insufficient to Defeat Order.

16. That distribution of real property of an estate will result in loss and inconvenience to the devisees is of no concern to the executor, and the latter cannot defeat a petition for such distribution on the ground that for that reason a prior order of sale should stand, under sections 10334 and 10335 of the Revised Codes, these sections being applicable only to action by the court after distribution and at the instance of interested parties.

Same—Distribution of Real Property—Notice—Failure to Serve Nonappearing Devisees—Jurisdiction—Presumption.

17. Under sections 10323 and 10327, of the Revised Codes, relative to distribution of estates, failure of petitioners to serve nonappearing devisees with process does not deprive the court of jurisdiction to make the order of distribution, it being presumed, in the absence of any showing to the contrary, that the notice required by section 10330 to be given by posting or publication was caused to be given by the court or judge.

Same—Distribution of Real Property—Determination of Heirship—When Unnecessary.

18. Where there are no foreign heirs and where the persons entitled to share in an estate have been fully determined and there is no question raised as to their rights, the authority of the court to order distribution does not depend upon a prior determination of heirship under sections 10234 and 10325 of the Revised Codes; but if the court should deem a proceeding

---

15. What constitutes contest or attempt to defeat will within provision thereof forfeiting share of contesting beneficiary, see notes in 5 A. L. R. 1370; 14 A. L. R. 609; 26 A. L. R. 764.

[77 Mont. 182.]

for such determination necessary, it would not be warranted in dismissing the petition for distribution, but should suspend it until such determination could be had.

---

[1] Appeal and Error, 3 C. J., sec. 1143, p. 1109, n. 74 New; sec. 1152, p. 1116, n. 31 New. Et al., 21 C. J., p. 1255, n. 27.

[2] Appeal and Error, 3 C. J., sec. 1152, p. 1116, n. 31 New; sec. 1212, p. 1148, n. 83 New.

[3] Appeal and Error, 3 C. J., sec. 1320, p. 1218, n. 9; p. 1219, n. 10.

[4] Executors and Administrators, 24 C. J., sec. 1281, p. 473, n. 64, 68 New.

[5] Executors and Administrators, 24 C. J., sec. 594, p. 131, n. 15; Wills, 40 Cyc., p. 1995, n. 24.

[6] Executors and Administrators, 24 C. J., sec. 1281, p. 473, n. 68 New; sec. 1368, p. 516, n. 56 New.

[7–10] Executors and Administrators, 24 C. J., sec. 637, p. 157, n. 57; p. 158, n. 58. Wills, 40 Cyc., p. 994, n. 4, 5, 7, 8; p. 1392, n. 11; p. 1396, n. 39; p. 1047, n. 93; p. 1525, n. 11; p. 1526, n. 12; p. 1824, n. 88.

[11, 12] Estoppel, 21 C. J., sec. 130, p. 1126, n. 51; sec. 136, p. 1135, n. 83; sec. 155, p. 1152, n. 97.

[13] Executors and Administrators, 24 C. J., sec. 1361, p. 510, n. 98 New.

[14] Courts, 15 C. J., sec. 418, p. 994, n. 7.

[15] Wills, 40 Cyc., p. 1713, n. 56 New.

[16] Executors and Administrators, 24 C. J., sec. 1361, p. 510, n. 98 New.

[17] Evidence, 22 C. J., sec. 69, p. 130, n. 30.

[18] Actions, 1 C. J., sec. 418, p. 1162, n. 68. Executors and Administrators, 24 C. J., sec. 1357, p. 508, n. 78 New.

---

*Appeal from District Court, Silver Bow County; George Bourquin, Judge.*

Petition by Mrs. Ann Flynn and others for an order requiring Patrick Dougherty, as executor of the estate of James McGovern, deceased, to render final account, settle the estate, and deliver possession of real estate to the devisees. From an order denying the petition and dismissing the proceeding, petitioners appeal. Reversed and remanded, with directions.

*Mr. Earle N. Genzberger,* and *Mr. Platt Whitman,* the latter of the Bar of Wisconsin, submitted an original and a reply brief, and argued the cause orally.

The court erred in denying the appellants' petition for delivery to them of their respective interests in the real estate of the estate of James McGovern, deceased. (See sec. 10139, Rev.

Codes 1921; *In re Jennings' Estate,* 74 Mont. 449, 550, 241 Pac. 648; *In re Bradfields' Estate,* 69 Mont. 247, 221 Pac. 531; *Estate of Glenn,* 153 Cal. 77, 94 Pac. 230; *Haydon* v. *Normandin,* 55 Mont. 539, 179 Pac. 460.) It was not only the privilege, but the duty of the court to make the order prayed for. (*In re Fratt's Estate,* 60 Mont. 526, 199 Pac. 711; *In re Fleming's Estate,* 38 Mont. 57, 98 Pac. 648; *Estate of Des Champs,* 65 Mont. 207, 212 Pac. 512.)

It is very certain that the will in this case does not give any express power to sell ˑe real estate owned by James McGovern. The will does not in express language impose any duty on the executor to make the sale, which he by his affidavit and return shows to be impracticable. We contend that to imply such duty is to put a strained construction upon the will. (*Poulter* v. *Poulter,* 193 Ill. 641, 61 N. E. 1056; *Chandler* v. *Thompson,* 62 N. J. Eq. 723, 48 Atl. 583; *Murdock* v. *Kelley,* 62 App. Div. 562, 71 N. Y. Supp. 152; *Reynolds* v. *Reynolds,* 27 R. I. 520, 63 Atl. 804; *Walker's Trustee* v. *Walker,* 196 Ky. 346, 244 S. W. 772; *Campbell* v. *Cole,* 71 N. J. Eq. 327, 64 Atl. 461; *Van Houten* v. *Hall,* 73 N. J. Eq. 384, 67 Atl. 1052.)

In *In re Nix's Estate,* 66 Mont. 559, 566, 213 Pac. 1089, this court held there would be no estoppel of an heir as to the exercise of one of their substantial rights unless the executor was misled to his prejudice. If Patrick Dougherty has no interest in this estate, we fail to see how he could be misled to his prejudice. Furthermore, this court has expressed its doubt as to whether it is ever possible to apply any phase of the doctrine of estoppel to a set of facts occurring in probate. (*In re Connolly's Estate,* 73 Mont. 35, 67, 235 Pac. 408.)

Nonappearing devisees and legatees are not "adverse parties" to the appeal. (*Carpenter's Estate,* 146 Cal. 661, 80 Pac. 1072; *McDougald's Estate,* 143 Cal. 476, 77 Pac. 443; *In re Scott's Estate,* 7 Cal. Unrep. 187, 77 Pac. 446.)

The words "estate" and "property" have been held in this court to be synonymous (*State ex rel. Gilmore* v. *District Court,*

45 Mont. 335, 341, Ann. Cas. 1914A, 469, 122 Pac. 922), and we submit that the same is true here, and that the word "estate" refers to both real and personal property. (*State* v. *Fidelity & Deposit Co. of Maryland,* 35 Tex. Civ. App. 214, 80 S. W. 544; *Dickson* v. *New York Biscuit Co.,* 211 Ill. 468, 71 N. E. 1058; *Thorn* v. *DeBreteuil,* 179 N. Y. 64, 71 N. E. 470; *Johnson* v. *Johnson,* 32 Minn. 513, 21 N. W. 725; *Fosdick* v. *Town of Hempstead,* 55 Hun 611, 8 N. Y. Supp. 772; *Laing* v. *Barbour,* 119 Mass. 523; *Price* v. *Price,* 52 N. J. Eq. 326, 29 Atl. 679; *Carter* v. *Gray,* 58 N. J. Eq. 411, 43 Atl. 711.) Hence the following language employed in the will, "I give, devise and bequeath * * * an undivided one-sixth interest in my estate," is sufficient to convey by will all property, real and personal, which James McGovern owned at the time of his death.

By an ingenious argument, counsel for respondents attempts to point out an equitable conversion of the property of James McGovern from real estate into personal property. That there is no equitable conversion in this case, see *Janes* v. *Throckmorton,* 57 Cal. 368; *White* v. *Howard,* 46 N. Y. 144; *Bleight* v. *Manufacturers' and Mechanics' Bank,* 10 Pa. St. 131. "To constitute equitable conversion, there must, however, be no doubt as to testator's intention to convert, * * * and this intention, whether expressed or implied, must be unconditional." (2 Woerner Adm., 3d ed., page 1140, citing *Hobson* v. *Hale,* 95 N. Y. 588, *Hale* v. *Hale,* 125 Ill. 399, 17 N. E. 470, *Chew* v. *Nicklin,* 45 Pa. St. 84.) "If there is any doubt as to the intention of the testator, the original character of the property will be retained." (*Keller* v. *Harper,* 64 Md. 74, 1 Atl. 65.)

*Mr. J. E. Healy,* for Respondent, submitted a brief, and argued the cause orally.

Motion to dismiss: There is no security by way of bond for these appeals. Only one bond was deposited with the clerk.

The orders sought to be reviewed, as shown by the notice of appeal, are as follows, *viz.:* (1) Order denying the petition for citation to render final account; (2) order denying the petition for the delivery of the real estate to the heirs and devisees; (3) order denying the final closing of the estate of James Mc-Govern, deceased. The order itself includes two distinct orders: (1) Order to render final account, and (2) order of delivery of real estate. In spite of the attempt to make the word "order" in the singular in the notice of appeal, these are separate and distinct orders, and the notice is void for uncertainty and ambiguity, and likewise the undertaking cannot be referred to either or any of the orders sought to be reviewed. (Spelling on New Trial & Appeal, sec. 534, note 59, p. 1130; *In re Kappler's Estate,* 38 Mont. 419, 100 Pac. 229; *State ex rel. Rosenstein* v. *District Court,* 41 Mont. 100, 21 Ann. Cas. 1307, 108 Pac. 580; *In re Barker's Estate,* 26 Mont. 279, 67 Pac. 941.)

Notice to adverse parties: This proceeding in the lower court was begun against the executor only, and was not begun by notice given to any of the other nonjoining legatees, or persons interested under the will of James McGovern, deceased. Notice of appeal must be served on all adverse parties. (*Spokane Ranch & Water Co.* v. *Beatty,* 37 Mont. 342, 96 Pac. 727, 97 Pac. 838.) The persons interested and not served are too clearly adverse parties.

The will in clause nine provides that any of the beneficiaries under it who, directly or indirectly shall contest it, shall be barred from any share in the estate in excess of five dollars. There must be compliance with the condition and no one can receive the bounty of the testator without fully complying with his conditions. (*Smithsonian Institute* v. *Meech,* 169 U. S. 398, 42 L. Ed. 793, 18 Sup. Ct. Rep. 396 [see, also, Rose's U. S. Notes].) It is not enough to say that no contest of the will was in terms made, the condition is broader. As was said by the supreme court of California, in *Miller's Estate,* 156 Cal. 119, 23 L. R. A. (n. s.) 868, 103 Pac. 842: "No such exception is stated in the

contest provision contained in the will and we know of no principle that authorizes us to declare it.'' The provision is binding: 5 A. L. R. 1363–70, also 1426; *In re Hite,* 155 Cal. 436, 17 Ann. Cas. 993, 21 L. R. A. (n. s.) 953, 101 Pac. 443; *In re Garcelon,* 104 Cal. 570, 43 Am. St. Rep. 134, 32 L. R. A. 595, 38 Pac. 414; *Moran* v. *Moran,* 144 Iowa, 451, 30 L. R. A. (n. s.) 898, 123 N. W. 202. Any attempt on the part of a legatee to claim by legal procedure the title to land, ownership of which is asserted by his testator in the will, is a contest of the will within the meaning of the forfeiture clause. (Note to 5 A. L. R. 1370.)

Power of sale was given the executor impliedly in the will: An implied power of sale is given to the executor when the testator blends the proceeds of real estate into one fund with the personalty for the purpose of distribution or accumulation, or even when there is no direction to distribute. (11 Am. & Eng. Ency. of Law, 2d ed., 1043; *Wood* v. *Lembcke,* 72 N. J. Eq. 651, 66 Atl. 903; *Bonacum* v. *Manwaring,* 85 Neb. 60, 122 N. W. 711; *Stoff* v. *McGinn,* 178 Ill. 46, 52 N. E. 1048; *Winston* v. *Jones,* 6 Ala. 552; *Going* v. *Emery,* 16 Pick. (Mass.) 107, 26 Am. Dec. 645; *Harris* v. *Ingalls,* 74 N. H. 339, 68 Atl. 34.)

In this case from evidence and from a construction of the will, there appears a necessity to convert the property into money. ''The necessity of a conversion of realty into personalty to accomplish the purposes expressed in the will is equivalent to an imperative direction to convert.'' (*Fulmer* v. *Gable,* 73 Wash. 684, 132 Pac. 641; *Martin* v. *(Moore) Preston,* 49 Wash. 288, 94 Pac. 1087.)

The petitioners are not entitled to possession: Section 10139 of the Montana Code has no application for it only applies to devisees and heirs at law, not to legatees. Likewise the cases of *Estate of Glenn,* 153 Cal. 77, 94 Pac. 230, *State* v. *District Court,* 51 Mont. 309, 152 Pac. 747, *In re Dolenty's Estate,* 53 Mont. 33, 161 Pac. 524, and *In re Tuohy's Estate,* 33 Mont.

230, 83 Pac. 486, have no application in the way contended as they relate to specific devises, to heirships and estoppels.

Petitioners are estopped: A party may be estopped by a mistaken view of the law, if mistake was made, just as much as in any other way. But here there was no mistake, the petitioners took a correct view of the law when they made their petitions for partial distribution; they now seek to take incorrect and destructive views contrary to the former view, which was founded upon right reason and sound sense. (*Brundy* v. *Canby*, 50 Mont. 454, 148 Pac. 315; *Glenn's Estate*, 153 Cal. 77, 94 Pac. 230; *In re Moore*, 96 Cal. 522, 31 Pac. 584.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Appeal from an order denying petition for order requiring the executor of the estate of James McGovern to render final account, settle the estate, and deliver possession of real estate to the devisees.

James McGovern, a resident of Silver Bow county, died testate on October 19, 1920, leaving an estate consisting of real and personal property. His will contains but ten short clauses, of which those numbered 1 and 2 direct the burial of his remains and the payment of his debts; 3 to 8, inclusive, each declares, "I give, devise and bequeath * * * (to either surviving sisters or the children of deceased brothers and sisters) * * * an undivided one-sixth interest in my estate," *etc.;* while clause 9 reads: "Should any of the beneficiaries under this will object to the probate thereof, or in anywise, directly or indirectly, contest or aid in contesting the same, or any of the provisions thereof, or the distribution of my estate thereunder, then and in that event I annul any bequest herein made to such beneficiary, and it is my will that such beneficiary shall be absolutely barred and cut off from any share in my estate in excess of five ($5.00) dollars." Clause 10

appointed Dougherty executor and requested that he be permitted to serve without bonds.

The will was duly admitted to probate and letters testamentary were issued to Dougherty who duly qualified and assumed the duties of executor on November 6, 1920. Notice to creditors, requiring the presentation of claims within ten months, was published November 20, 1920. On December 29, 1920, the executor filed his inventory and appraisement showing that the estate consisted of cash on hand $58,028.38, personal property of the value of $29,760.50, and real estate appraised at $50,200, the principal item of which was a one-half interest in the "Lizzie block" in Butte, appraised at $45,000. The record discloses that the rental on this block amounted to $1,287 per month, of which one-half went to the executor during the time he has been administering upon the estate.

On February 23, 1921, the state inheritance tax was fixed, paid, and forever foreclosed. Claims amounting to $3,019.35 were filed and approved, and after the payment of these claims and other expenses of administration, state, county and city taxes, and with a substantial increase in cash from rentals, dividends, *etc.*, the executor reported a balance of cash on hand May 5, 1921, of $53,186.72. On November 23, 1921, the court ordered distribution of $50,000 to the devisees under the will, and on December 7. thereafter the executor rendered his first "annual account," showing an accretion from rentals, *etc.*, of more than $6,000, the payment of the federal inheritance tax, state, county, and city taxes, and the sum of $3,000 attorney's fees, and $1,911.59 executor's commission on sums distributed, and this, with the distribution ordered, left a balance cash on hand of $12,363.28.

In November, 1922, the executor filed his second "annual account," showing the collection of rentals, dividends, *etc.*, and the payment of inheritance taxes in other states, and again the payment of local taxes and federal income tax and the payment

of an additional fee to his attorney of $3,000, with a balance on hand of approximately $3,000.

The third ''annual account'' was filed in November, 1923, showing receipts amounting to nearly $10,000, the payment of insurance premiums and taxes, executor's commission of $1,250, and attorney's fees of $4,000, and a balance on hand of something in excess of $5,000. No further accounts seem to have been filed.

On October 4, 1924, the court ordered the sale of certain personal property and thereafter ordered the distribution of $40,000 to the devisees, and this distribution was made.

On February 7, 1923, without a showing of necessity for the purpose of paying debts, the executor petitioned for an order of sale of the real property, alleging that such sale was for the best interest of the estate and those interested therein, for the reason that ''your petitioner avers that he knows that the equal division of his estate made by the said James McGovern, deceased, into six equal parts, was intended by the said James McGovern, deceased, only to be accomplished by sale of the said property and the division under said sale of the money derived therefrom,'' and that a distribution in kind would be ''of no value or service and would be depreciated in value unduly, and, indeed, sacrificed to the said legatees under the will.'' The order was made and the sale noticed, but no bids were received, and the order was by the court continued in force. No sale was ever made, and nothing further having been done in the matter, on November 20, 1925, or five years after the appointment of the executor, devisees under the will entitled to 25/36 of the estate filed herein their petition praying that the executor be required to file a final account, settle the estate, and deliver possession of the real estate and the rents therefrom over to the ''heirs and devisees.'' The petitioners showed to the court that the period for the presentation of claims had long since expired; that all claims presented had been paid, as well as all proper charges of administration; that the estate was in

condition to be settled; and that $500 would suffice for that purpose. This petition, as well as all former petitions by devisees and the executor and all former orders of the court made herein, showed the names and addresses of all persons entitled to take under the will.

A citation was issued conforming to the prayer of the petition and in answer thereto the executor admitted, in effect, the allegations of the petition, but averred the construction of the will set out in his petition for order of sale of the real property, above, and alleged that this theory had been asserted by the executor and acquiesced in by the petitioners throughout the administration of the estate and had become the law of the case, and that petitioners were estopped by such acquiescence from challenging the correctness of such theory. He set up the order of sale of the real property and asserted that it constituted a final adjudication on the subject and that petitioners' only remedy was an application to the court to compel a sale thereunder. He further alleged that by instituting this proceeding the petitioners violated the terms of the condition set forth in clause 9 of the will and thus forfeited their right to receive anything under the will in excess of $5.

After a hearing had the court entered its order denying the prayer of the petition and dismissing the proceeding, from which order the petitioners have appealed.

Petitioners have made several specifications of error, but these, as a whole, present but the broad questions as to whether the court was correct in accepting the executor's interpretation of the will and was justified, under the condition of the estate, in denying the petition and dismissing the proceeding.

On June 10, 1926, counsel for the executor filed in this court his "motion on suggestion of diminution of the record" and submitted therewith a transcript of matter which he contends should appear in the record. This transcript contains a copy of an order of sale of personal property, made October 4, 1924, and a certificate of the clerk of the district court of Silver Bow

county to the effect that, in lieu of the customary appeal bond, the petitioners, through their attorney, delivered to said clerk the sum of $300 in cash, for which he gave a receipt reciting, "In cause No. 6339, In re Estate of James McGovern * * * for Appeal Bond Ann Flynn et al. * * * Account Appeal Bond Ann Flynn et al. in re Estate James McGovern, Deceased," and a like receipt from the treasurer of said county to the said clerk. On the same day counsel filed in this court a motion to dismiss the appeal upon the grounds (a) that the appeal bond is insufficient, in that three separate appeals are included in the notice of appeal, and the bond itself is ambiguous, and (b) that the bond was given by Ann Flynn alone or with one other, and is therefore not sufficient as to the remaining appellants, and (c) that those entitled to the remaining 11/36 of the estate were not served with notice of appeal.

1. The so-called "diminution of the record" will be allowed and the exhibit referred to will be considered as a part of the record on appeal.

2. (a) The first ground urged for the dismissal of the appeal [1] is without foundation in the record. The order appealed from is in the singular; it denied the petition presented and directed the dismissal of the proceeding. The petition sought only the settlement of the estate in the manner prescribed by statute, and, incidentally pointed out what was left to be done in order to accomplish that result. This situation differs materially from that presented to the court in *In re Kappler's Estate*, 38 Mont. 419, 100 Pac. 228, wherein the appeal was from three distinct orders made upon two adverse petitions for letters of administration, and but one bond filed. Even there Chief Justice Brantly remarked that the order made August 1, granting letters to one Milch, and the formal order made two days later, "may well be said * * * to be one and the same order." Nor is the situation referred to in *In re Barker's Estate*, 26 Mont. 279, 67 Pac. 941, analogous to that before us. There an attempt was made to appeal from certain specific

parts of an order, designated in the notice of appeal, as required by section 1724, Code of Civil Procedure of 1895, now section 9733, Revised Codes of 1921. These were held to constitute separate appeals. Here the petitioners appealed from the order, as a whole, which order refused to direct the distribution of the estate. But one bond on appeal was required.

(b) The bond was filed on behalf of the petitioners jointly. The Latin abbreviation "*et al.*" means "and another" or "and others," and, while its use in a bill of exceptions as referring to unknown parties to an appeal would amount to nothing (*Mutual Building, Loan & Investment Co.* v. *Dickinson,* 112 Ga. 469, 37 S. E. 713), it was here used by the clerk in a mere receipt for the money deposited as a bond, and can have no effect whatever. The bond would have been sufficient, had no receipt been given for the money so deposited.

There is no ambiguity in the bond. If a written undertaking [2] on appeal is executed, it must specify the purpose for which it is given; but under the statute the appellant is authorized to deposit with the clerk, with whom the judgment or order appealed from was entered, the sum of $300 "to abide the event of the appeal." (Sec. 9734, Rev. Codes 1921.) On a deposit of money no writing is required; the statute declares the purpose for which it was deposited.

(c) It is next contended that, as the notice of appeal was not [3] served upon devisees not joining in the petition for the order, it was not served upon "adverse parties," and the appeal must be dismissed, citing *Spokane Ranch & Water Co.* v. *Beatty,* 37 Mont. 342, 96 Pac. 727.

Section 9733, Revised Codes of 1921, requires notice of appeal to be served upon "the adverse party or his attorney." The statute, of course, requires service upon every "adverse party" to the action or proceeding; but a party is "adverse" only when he has "an interest in opposition to the object sought to be accomplished by the appeal." The adverse parties include "the party whose interest in relation to the subject of the ap-

peal is in conflict with the reversal of the order or decree appealed from, or the modification sought for by the appeal.'' (*T. C. Power & Bro.* v. *Murphy*, 26 Mont. 387, 68 Pac. 411.)

The nonappearing devisees were in the same position as to the estate as were the petitioners, and, from a discussion on the merits of the questions presented by the appeal, it will be seen that the statutory rights of those others will not be injuriously affected by a reversal of the order appealed from, but that, in fact, their rights can only be protected and secured by a reversal of that order. They were not therefore ''adverse'' parties on whom it was requisite that notice of appeal be served.

This question has never before been presented to this court, but, under like statutes and a like situation, the supreme court of California has repeatedly held that such others ''having allowed the other interested persons to conduct the proceedings for their benefit, they must be considered as having consented that they should be represented by these other persons in any appeal that may be taken from the order thus procured.'' (*McDougald's Estate*, 143 Cal. 476, 77 Pac. 443; *Scott's Estate*, 7 Cal. Unrep. 187, 77 Pac. 446; *Carpenter's Estate*, 146 Cal. 661, 80 Pac. 1072; *Ryer's Estate*, 110 Cal. 556, 42 Pac. 1082.)

The motion to dismiss the appeal is therefore denied. Passing then to the merits of the appeal:

3. This estate has been in the hands of the executor and [4] and subject to the expenses of administration for more than five years, and, considering the large amount of cash on hand at the time of the testator's death, the inconsiderable total indebtedness and entire absence of harassing litigation, unless some cogent reason rendered a continuation of the administration imperative, it should have been closed and the assets distributed at the expiration of the first year.

It is the policy of the law that estates of deceased persons be administered with dispatch, to the end that they shall not

be wasted by needless expenses incident to delay and continued allowances. (*In re Dolenty's Estate,* 53 Mont. 33, 161 Pac. 524; *In re Tuohy's Estate,* 33 Mont. 230, 83 Pac. 486.) This court has repeatedly urged this policy upon the courts and the members of the legal profession in this state. In the *Jennings' Estate,* 74 Mont. 449, 241 Pac. 648, Chief Justice Callaway said: "And right here it may be well to say that, unless special and sufficient reasons appear compelling a different course, it is the duty of an executor or administrator forthwith, after the expiration of the period provided for the presentation of claims against the estate, * * * to wind up the affairs of the estate. Mismanagement of the estates of the dead, and the long delays which too often are permitted in the settlement thereof, often come very near spoliation. The courts are charged with the solemn duty of seeing that there shall not be any spoliation either with ill or good intent. (Mr. Justice Milburn, in *State ex rel. Eakins* v. *District Court,* 34 Mont. 232, 85 Pac. 1024.)"

4. *Title* to the property left by a decedent does not depend [5] upon any action of the court, but vests in the devisees named in a will immediately upon the death of the testator, subject only to the liens of creditors for the payment of their debts and possession in the executor only for the purposes of administration, and the decree of distribution merely releases the property from these conditions. (*In re Estate of Deschamps,* 65 Mont. 207, 212 Pac. 512; *Hoppin* v. *Long,* 74 Mont. 558, 241 Pac. 636.) For the purpose of satisfying liens against the property, any part, or all of it, may be sold under order of court, and in this respect there is no priority between real property and personal property (section 10195, Rev. Codes 1921), but, under the statute, real estate must be retained by the executor or administrator only until such time as it ·may be ascertained whether the rents, issues, and profits thereof, or the property itself, will be required for the payment of debts, and "unless it satisfactorily appears to the

[6]   court or judge that the rents, issues, and profits of the
real estate for a longer period are necessary to be received
by the executor or administrator, wherewith to pay the debts
of the decedent, or that it will probably be necessary to sell
the real estate for the payment of such debts, the court or
judge, at the end of the time limited for the presentation of
claims against the estate, must direct the executor or adminis-
trator to deliver possession of all the real estate to the heirs
at law or the devisees'' (sec. 10139, Rev. Codes 1921). This
statute is mandatory.   It requires no action on the part of
the ''heirs or devisees,'' but declares the imperative duty im-
posed upon the court or judge at a time specified and from
the performance of which the court or judge is relieved only
when it appears that the income from the property is neces-
sary for the sole purpose of paying ''the debts of the de-
cedent,'' or that it will probably be necessary to sell the prop-
erty for that purpose.

While section 10212, Revised Codes of 1921, authorizes an
order of sale on the ground that it appears to the satisfaction
of the court that it is ''for the advantage, benefit and best
interests of the estate and those interested therein,   *   *   *   ''
that the property be sold, and section 10216 provides that,
where it is necessary that an order of sale of a part of the
real estate be sold, and that by such sale a residue of the
estate or some specific part thereof would be greatly injured
or diminished in value or subjected to expense or rendered
unprofitable, *etc.*, and it appears to the best interest of all
concerned that such residue be sold, the court may order
a sale, no such considerations enter into the determination
as to when the real estate shall be delivered over to the heirs
or devisees.

When it appears that the time for the presentation of claims
has expired and that all of the ''debts of the decedent'' have
been paid, no discretion remains; the statute must be obeyed.

Where an executor, without an order of the court, delivered

possession, this court held that he only did that which the court would have been compelled to do, had application been made therefor. (*In re Bradfield's Estate,* 69 Mont. 247, 221 Pac. 531.) Under the statute it is not even requisite that an "application" be made. The duty is imposed upon the court or judge, not upon petition or application, but upon the happening of the events designated.

It is clear that in the matter before us, in the absence of some sufficient reason for failure to do so, the court or judge having jurisdiction of this estate should have performed his duty some eighteen months prior to the time the order for the sale of this real estate was made. Counsel for the executor contends that such sufficient reasons are to be found in the provisions of the will itself.

5. It is contended that, by the use of the word "estate" rather than the designation of real and personal property, [7–10] and the bequest of "undivided one-sixths" interests in "my estate," and the use of the word "bequest" alone in the ninth clause, quoted above, the testator manifested a clear intention to grant to the executor the power of sale over the real estate and clearly intended to direct that his entire estate be converted to cash and then, and then only, distributed to the devisees, and that such provisions of the will constituted an equitable conversion of the real estate into personal property.

We find nothing in the will, all of the provisions of which are sufficiently set out above, to justify such contention. "The word 'estate' in a will carries everything, unless restrained by particular expressions. It includes both personalty and realty and is sufficient to pass a fee in land, unless restricted by words expressing a different intention." (28 R. C. L. 236, and cases there cited.) The word "estate" is used in the will in the same manner as it is used throughout our statute books. It "is not in popular parlance more comprehensive in meaning than the term 'property.' As used in our statute, the two seem to be synonymous." (*State ex rel. Gilmore* v. *District Court,* 45 Mont. 335, Ann. Cas. 1914A, 469, 122 Pac.

922.) The words used in a will must be given their ordinary, and not technical, meaning. (*In re Klein's Estate*, 35 Mont. 185, 88 Pac. 798.) Here the term is restricted by "no words expressing a different intention"; on the contrary, its use is coupled with the pharse: "I give, devise and bequeath." A "devise" is a gift of real property, and a "bequest" a gift of personal property. (*In re Fratt's Estate*, 60 Mont. 526, 199 Pac. 711.)

The use of the phrase "undivided one-sixths" rather rebuts than establishes counsel's contention. His argument that the phrase directs the executor to reduce the estate to such a condition that it may be divided into sixths, and then to divide and distribute it, lacks logic.

The use of the term "bequest" only, in clause 9, has no particular significance, for the reason that "devise" and "bequest" are often used synonymously, and the intention of the testator is to be drawn from the words of the will, taking into view the circumstances under which it was made. (*In re Spriggs' Estate*, 70 Mont. 272, 225 Pac. 617.) Here there is no question but that the testator intended to convey his entire estate, both real and personal: and, while we are not called upon at this time to construe the forfeiture clause, he clearly intended that any devisees not living up to the conditions imposed should take nothing in excess of $5. If, as was held in the *Spriggs Case*, the term "effects" included real estate, surely the term "bequest," which is often used synonymously with "devise," would include real estate in the prohibition in clause 9.

As to the power of sale granted the executor in the will, it is certain that no such power is expressly granted, and such a power can only be implied when it is clear from the entire will that such power was intended. It must be found that some duty is imposed upon the executor by the testator which necessarily carries with it the sale of the real estate in order to enable him to perform the duty. (*Chandler* v. *Thompson,*

62 N. J. Eq. 723, 48 Atl. 583; *Reynolds* v. *Reynolds,* 27 R. I. 520, 63 Atl. 804.)   There is nothing in the will before us justifying such implied power, and, if the executor and his counsel considered that such power was granted in the will, they did not act upon such belief, for they proceeded under orders of sale obtained from the court upon a contradictory theory; *i. e.,* the best interest of the devisees.

Constructions placed on wills in other jurisdictions and under divergent phrasing are useless, as "no will has a brother." The will before us is clear, concise, and to the point.   It manifests only the intention of the testator to devise and bequeath his entire estate to those named therein in "undivided one-sixths" interests, subject only to the observance of the conditions set out in clause 9.

6. It is next contended that, as the estate has been conducted [11, 12] for five years under the theory of the executor's interpretation of the will, and this conduct has been acquiesced in by the petitioners, they are now estopped from questioning the continuation of such conduct.

The doctrine of estoppel cannot be resorted to unless the party asserting it relied upon and was misled to his prejudice by the acts of his opponent. (*In re Nix's Estate,* 66 Mont. 559, 213 Pac. 1089.)   Here the executor was proceeding, not on the theory that he was granted a power of sale under the will, but on the theory that, under the statutes, he was entitled to sell under order of court.   But, even though the record justified the assertion that he was proceeding under the will, he was not interested in the estate, and we fail to see how he was, in any manner, misled to his prejudice by any act of the petitioners; rather he benefited by their forbearance. Their indulgence furnishes no excuse for his failure to settle the estate.   (*State ex rel. Pauwelyn* v. *District Court,* 34 Mont. 345, 86 Pac. 268; *In re Dougherty's Estate,* 34 Mont. 336, 86 Pac. 38.)

7. Again it is asserted that the trial court was justified in [13] dismissing the proceeding, for the reason that the order

of sale of the real estate was a final adjudication from which no appeal was taken and petitioners' only recourse was the enforcement of that order. The answer to their assertion is that the order was, under the only reasonable construction which can be given to the will, void in its inception, as the property should have been turned over to the devisees long prior to the time the order was made; and, second, that such an order is analogous to an order of sale on foreclosure, with the executor standing in the position of the officer appointed [14] by law to carry it into execution. Every court has power to control such process. "Ordinarily, the result of an order of sale would seem to be to cut off the right to have distribution, because the creditors have an absolute right to have their liens foreclosed. But, if the circumstances are such as to warrant it, the court may not only entertain the petition, but grant the order prayed for, notwithstanding the order of sale has been made." (*State ex rel. Pauwelyn* v. *District Court,* above.) Here the reasons for disregard of the order of sale are more cogent than in the case cited.

8. Counsel contends that these petitioners should not prevail, [15] for the reason that, by commencing these proceedings, they interfered with the distribution of the estate under the will and thus violated the condition found in clause 9. There is no merit in this contention. Clause 9 was clearly intended by the testator solely to prevent litigation tending to defeat his expressed wish as to the manner in which, and the persons to whom, his estate should be distributed, as that wish was expressed in his will. All that the petitioners sought to accomplish was that the estate be distributed in accordance with the provisions of the will. They asserted their rights under the will and not contrary thereto, and clause 9 has no effect whatever so far as this proceeding is concerned.

9. It is urged that the order of sale must stand and sale be [16] made thereunder, as a distribution in kind would result in loss and inconvenience to the devisees, thus bringing the

distribution within the provisions of sections 10334 and 10335, Revised Codes of 1921. The matter as to whether the devisees may suffer loss is one with which the executor is not concerned, and the provisions of the sections last cited have no application to conditions existing prior to distribution, but apply only to action by the court after distribution and at the instance of interested parties.

10. Again it is contended that the court is without jurisdiction to order a distribution of the estate, for the reason that those entitled to the remaining 11/36 interests were not served with process.

' The court has authority, in the absence of any action on the part of the heirs or devisees, to require an executor to render accounts due and deliver the real estate to those entitled thereto; so that, as to those matters, it was immaterial whether all, or any, of the devisees, petitioned for such an order, and, as to the request that the executor be required to distribute to petitioners their shares, such an application may be made by "any heir, devisee or legatee" after the expiration of one year from the issuance of letters testamentary (sec. 10323, Rev. Codes 1921), and upon final settlement any heir, devisee, or legatee may petition for the distribution of the estate (sec. 10327). Upon either petition no "service of process" is required, other than the giving of such notice as is required by section 10330. It must be presumed in the absence of any showing to the contrary that official duty has been performed, and, therefore, that such notice as the court required was duly given.

11. Finally, it is asserted that the court was without authority to make the order applied for, for the reason that the provisions for the determination of heirship and interest in an estate found in sections 10324 and 10325, Revised Codes of 1921, had not theretofore been complied with. The assertion was likewise made in *In re Davis' Estate,* 27 Mont. 490, 71 Pac. 757, and there declared to be without merit; the

court stating that the section does not require that such suit be brought as a condition precedent to an order of distribution. Where there are no foreign heirs, as here, and where the persons entitled to share in the estate have been fully determined, as they have here, and their is no question raised as to their rights, such proceeding would be useless. Further, if the court had deemed it necessary to institute such proceeding for the purpose of determining the interest to which any of the devisees were entitled, such conclusion would not warrant the dismissal of the proceeding, but only the suspension thereof until, under the direction of the court, proceedings under section·10324 were instituted and concluded.·

For the reasons stated herein, the order appealed from is reversed, and the proceeding remanded to the district court of Silver Bow county, with direction to grant the prayer of the petition.

*Reversed and remanded.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICE STARK and HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.

MR. JUSTICE GALEN not sitting.