474

In re MYER'S ESTATE. KEYS, Public Administrator, Appellant, *v.* KEMPER, Respondent.

(No. 6,950.)

(Submitted September 23, 1932. Decided October 29, 1932.)

[15 Pac. (2d) 846.]

Mr. *J. Miller Smith, Mr. Paul W. Smith, Mr. David R. Smith* and *Mr. E. G. Toomey,* for Appellant, submitted a brief; *Mr. Toomey* argued the cause orally.

*Messrs. Smith, Mahan & Smith,* for Respondent, submitted a brief; *Mr. John W. Mahan* argued the cause orally.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

Frank Myer, a resident of Lewis and Clark county, died August 24, 1931, leaving an estate consisting mostly of personal property.

On that day Henry Kemper, a nephew of decedent, filed with the clerk of the court an application for letters of administration. On the next day James E. Keys, public administrator of Lewis and Clark county, filed two applications in the matter of the estate, one that special, and the other that general, letters of administration be granted to him.

The court forthwith ordered special letters issued to the public administrator, upon which he qualified and took charge of the estate.

Kemper filed objections to the granting of letters (general) to Keys, and Keys filed objection to the granting of letters to Kemper. The court heard the respective applications and objections together, and, upon consideration, ordered the issuance of letters to Kemper. From this order Keys appealed.

The case turns upon this question: Was Kemper at the time he filed his application for letters a bona fide resident of this state?

Section 10072, Revised Codes 1921, provides: "No person is competent or entitled to serve as administrator or administratrix who is: 1. Under the age of majority. 2. Not a bona fide resident of the state; but if a person otherwise entitled to serve is not a resident of the state, and either the husband, wife, or child, or parent, or brother, or sister of the deceased, he may request the court or judge to appoint a resident of the state to serve as administrator, and such person may be appointed, but no other nonresident than a surviving husband, wife, or child, or parent, or brother, or sister shall have such right to request an appointment, and the court or judge must order letters issued to the applicant entitled thereto under the provisions of this chapter. 3. Convicted of an infamous crime. 4. Adjudged by the court incompetent to execute the duties of the trust by reason of drunkenness, improvidence, or want of understanding or integrity."

The case has been argued with much vigor, and it must be admitted that the evidence presents a condition upon which there may be an honest difference of opinion. But, upon the presumption that the action of the lower court is right and

that the trial judge is in a better position to weigh the effect of evidence coming from the lips of the witnesses than is the reviewing court, we have no hesitancy in entering an order of affirmance.

Considerable debate has centered about the form of Kemper's petition and an amendment allowed by the court. At the outset Kemper stated in his petition for letters, "The petition of Henry Kemper of said Lewis and Clark County, respectfully shows," and later on he averred "that the next of kin of said deceased, and whom your petitioner is advised and believes and therefore alleges to be the heirs at law of said deceased, are your petitioner, Henry Kemper, a nephew, Frank E. Kemper, nephew, residing at Brandon, Wisconsin," following with others whose names and residences were given.

At the hearing, by permission of the court, after the words "your petitioner Henry Kemper," the following was inserted: "(Your petitioner a resident of Montana)." Whether necessary or not, this was to obviate the argument that by the use of the language, "your petitioner Henry Kemper, a nephew, Frank E. Kemper, nephew, residing at Brandon, Wisconsin," the petitioner stated in effect that his residence was at Brandon. The court did not err in allowing an amendment.

Kemper testified that he is a bachelor; for some time before coming to Montana he did not maintain a residence of his own, but lived with a brother and sister near Lancaster, Wisconsin. He owned farm land near Lancaster, but had been in retirement for some four years, receiving a share of the rents from the land, which his brother collected for him. About the 12th of August, 1931, he was advised by one Dagenais of Helena, Montana, of the illness of Myer, and about two days later received a letter from Dick Tobin saying that Myer needed someone to look after him. Kemper talked over the situation with his brothers (he had two brothers at Lancaster) and sister, and it was decided that someone would have to come to Montana to look after Myer and he made preparations to do so. While arranging his affairs, he received a telegram from Mr. Tobin that he had better come at once, and

he started immediately, arriving in Helena on August 17. He went to see his uncle on that day, finding the sick man at the county poor farm (although Myer was then worth approximately $24,000, of which over $20,000 was on deposit in two solvent banks in Helena), and talked with him. Kemper also talked with Mr. Tobin, superintendent of the poor farm, by whom he was advised that someone should be appointed to care for Myer, and to look after his business. Accordingly, on the same day Kemper called upon an attorney, Mr. Sherman W. Smith, as to the propriety of having himself appointed guardian for his uncle. Mr. Smith informed him that he must be a resident of the state in order to obtain letters of guardianship, to which Kemper replied that he had already decided to come to this state on account of his health; he was afflicted with chronic sore throat, and his physician had previously advised him to go to a mountain climate; that, the physician said, was the only remedy for his condition. Kemper had been in Montana the year before, and the climate suited him very well; he had been thinking of making the change; and he was then in a position to make it; there was nothing in the state of his affairs at Lancaster to prevent his doing so. He testified that he intended to become, and declared his intention to become, a resident of Montana on August 17, 1931.

Thereupon, on that day, he signed a petition for letters of guardianship, in which he said that "the only relative of said incompetent residing in said county of Lewis and Clark is your petitioner, Henry Kemper." However, upon the day following, learning that his uncle was failing very fast and would die soon, he decided to hold up the guardianship proceedings.

After filing the petition for letters of administration, Kemper, so he testified, made inquiries respecting farming lands, intending to buy if he could find something to his liking. He examined one farm which was recommended to him, but it did not please him. At the time of the hearing he still had the intention of purchasing, if a suitable place could be found.

He was then living at a private residence, and advised his landlord that he would stay there indefinitely. He said that he had never made any statement to anyone that he did not intend to reside in Lewis and Clark county or that he was here only temporarily.

Upon cross-examination he said he told his brother, who had been looking after the Wisconsin farm, that he would not be back there, and the brother would have to look after the business. He testified that he did not intend to vote in Wisconsin any more; he intended to vote in Montana, depending upon where he would locate; he did not intend to go back to Wisconsin.

Sherman W. Smith testifying as a witness, corroborated Kemper upon essential points.

Kemper stated to Mr. Tobin, so the latter testified without objection, that he was going to live in Montana; that he liked the climate and the country.

There was testimony to the effect that Kemper had made statements indicating that he did not intend to become a resident of this state, and it is argued by the counsel for Keys that such testimony, fortified by facts and circumstances which sustain that position, should have compelled a ruling in favor of Keys. But the court ruled otherwise.

It would be a perversion to say that there is not substantial evidence to justify the court's findings and conclusions of law in favor of Kemper. It is true, as counsel for the appellant says, that, whatever may be the law elsewhere, section 10072, supra, disqualifies a nonresident of Montana from exercising the duties of an administrator; the applicant must be not only a resident but a bona fide resident of Montana in order to qualify.

Upon the evidence, the trial judge was justified in finding that Kemper did move to Montana and intended to establish a residence here, which intention he entertained when he filed his application for letters, and when giving his testimony in support of it. In this situation the case is foreclosed against

the appellant upon the authority of *In re Estate of Nix*, 66 Mont. 559, 213 Pac. 1089.

The court permitted certain testimony over objection, reserving its ruling as to the propriety of so doing, with the comment that, "if there is any part of it that cannot be considered, counsel have the assurance of the court that the court is going to disregard it," but, if competent, the court would consider it. We are satisfied no harm came to appellant; doubtless the court disregarded that which should not have been admitted. But see *Hall* v. *Hall*, 70 Mont. 460, 466, 226 Pac. 469.

The order is affirmed.

ASSOCIATE JUSTICES ANGSTMAN and MATTHEWS and HONORABLE JEREMIAH J. LYNCH and HONORABLE JOHN HURLY, District Judges, sitting, respectively, in place of JUSTICES GALEN and FORD, disqualified, concur.